Lewis E. MELAHN, Director of the Missouri Division of Insurance and Receiver of Transit Casualty Company, Appellee,

v.

**PENNOCK INSURANCE, INC., Appellant.**

**No. 91–2316.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1992.

Decided June 5, 1992.

Bonnie Brigance Leadbetter (argued), Philadelphia, Pa. (Nicholas M. Monaco and Keith A. Wenzel, Jefferson City, Mo., on the brief), for appellant.

James C. Owen (argued), Chesterfield, Mo. (Todd A. Massa, Richard H. Ralston, Thomas M. Franklin, and Diane P. Duvall, on the brief), for appellee.

Before ARNOLD, Chief Judge, and McMILLIAN, Circuit Judge; and WELLFORD,* Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

The plaintiff, Lewis E. Melahn, as receiver of Transit Casualty Co. (Transit), filed a motion in the Circuit Court of Cole County, Missouri, on November 7, 1990, to show cause why defendant, Pennock Insurance, Inc. (Pennock), had not filed a response to his demand for $362,763.00, which he claimed to be due. Transit is an insolvent insurance company placed in receivership by the state of Missouri under its system of laws governing insurance company failures. The Missouri court, on November 9, 1990, entered a show cause order as requested and presumed jurisdiction based on statements by plaintiff's counsel.[1] There is

---

* THE HONORABLE HARRY W. WELLFORD, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. In a memorandum filed in the district court, plaintiff's counsel conceded that he "has located no case directly on point with the case herein which clearly interprets the Missouri Long Arm Statute."

a serious question of jurisdiction over Pennock under Missouri's long arm statute.

The receiver alleged that Pennock owed Transit unearned commissions on premiums due but not collected and on premiums collected but not remitted. In response to this complaint, Pennock removed the case, on November 23, 1990, to federal court pursuant to 28 U.S.C. § 1441(a) and then moved, on December 4, to dismiss for lack of personal jurisdiction.[2] Some eighty days after notice of removal, the plaintiff moved to remand the case to state court on the basis of abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), claiming that the special administrative system established under Missouri law for the liquidation of defunct insurers, such as Transit, would be frustrated by the exercise of federal jurisdiction. The district court granted the plaintiff's motion to remand without ruling on the defendant's motion to dismiss for lack of personal jurisdiction, bringing about defendant's appeal.

After removal to federal court and before seeking a remand based on abstention, plaintiff pursued a similar cause of action, on December 3, 1990, in Pennsylvania state court against Pennock. Plaintiff initiated this state court action shortly before Pennock moved to dismiss for lack of personal jurisdiction in Missouri based on a showing that it was not licensed to do business in Missouri and that it had operated no business there. Plaintiff claimed, however, that "Pennock was engaged in the business of acting as insurance agent for Transit." Pennock maintained that the attempted exercise of jurisdiction in Missouri would violate its due process rights under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its

progeny. In a supplemental memorandum to the district court, Pennock noted that the plaintiff filed "an identical action" in Pennsylvania which it asserted should estop plaintiff from proceeding further in Missouri.

Melahn's "equity" action against Pennock in the Delaware County, Pennsylvania state court claimed that Pennock had collected premiums on Transit insurance policies and that Pennock was "obligated to account for and pay over such amount to the Receiver[ ]." Melahn sought a monetary judgment of $140,000 in premiums and unearned commissions, plus costs, expenses, "statutory interest which has accrued," and an accounting.[3] Plaintiff also sought an injunction and extraordinary relief in Pennsylvania. He made no reference, however, to any criminal penalty. In March of 1991, Melahn filed extensive interrogatories and requests for production of documents seeking substantial discovery about transactions between the parties in Pennsylvania, including "the total amount claimed by Pennock to be owing." This was after the receiver's motion to remand to the Missouri state court.

The district court granted, on May 9, 1991, plaintiff's motion for remand, but did not rule on defendant's motion to dismiss for lack of personal jurisdiction. In granting the motion to remand, the court acknowledged that "[a]bstention, although discretionary, should be applied only in rare circumstances." (Citing *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 826–27 (8th Cir.1990)). Nevertheless, the court based its decision to abstain on two of the four relevant factors set out in *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699 (10th Cir.1988), *cert. denied*, 489 U.S.

---

2. "The right of removal of a suit from state court to federal court is a statutory right. 28 U.S.C. § 1441. A defendant is entitled to have the suit removed to a proper federal court as a matter of right, on complying with the conditions prescribed by statute." *Regis Assocs. v. Rank Hotels (Management) Ltd.*, 894 F.2d 193, 195 (6th Cir.1990). *See also White v. Wellington*, 627 F.2d 582, 586 (2d Cir.1980).

3. Melahn asserted in the Pennsylvania complaint that "books and records between Transit and Pennock is [sic] so complicated that remedy at law is insufficient." In a memorandum in support of abstention and remand filed in the federal district court in Missouri, plaintiff asserted that in May of 1990 he demanded $362,762 in unearned commissions. We are not told the basis for the discrepancy between the earlier demand for some $362,000 and the $140,000 later demanded.

1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989):

> (1) the action was "based entirely on a complex area of state law; [and] the sole basis for removal rest[ed] in diversity jurisdiction."
>
> (2) "the state[ ] [had an] interest in supervising a single action within a state forum to regulate insurance practice." (Citing Mo.Ann.Stat. § 375.720 which provides criminal penalties for "neglect or refusal to deliver property belonging to an insolvent insurer.") [4]

On our own motion, we ordered the parties to file additional letter briefs regarding appellate jurisdiction and whether 28 U.S.C. § 1447(d) applies to this case. We consider these jurisdictional issues in conjunction with the merits of abstention in the appeal.

## I. APPELLATE JURISDICTION

■ Pennock argues that appellate review is proper under the collateral order doctrine. *See Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207 (3d Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 276–78 (9th Cir.1984). In the alternative, Pennock asks the court to treat its notice of appeal as a petition for mandamus under Fed.R.Civ.P. 21.[5] Plaintiff counters that direct appeal is improper and that although mandamus may be the only means by which the case may proceed, it should not be applied in this case.

Whether appellate jurisdiction is present in this case under § 1447(d) depends, in part, upon interpretation of 28 U.S.C. § 1447(c), which provides:

> A Motion to Remand the case on the basis of any defect in removal procedure must be made within thirty (30) days after the filing of the Notice of Removal under section 1446(a). If at any time before final judgment it appears that the

district court lacks subject matter jurisdiction, the case shall be remanded.

The Supreme Court discussed the nature and circumstances of a grant of mandamus:

> A "traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26 [63 S.Ct. 938, 941, 87 L.Ed. 1185] (1943); *Ex parte Peru*, 318 U.S. 578, 584 [63 S.Ct. 793, 797, 87 L.Ed. 1014] (1943); *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382 [74 S.Ct. 145, 147, 98 L.Ed. 106] (1953). "Repeated decisions of this court have established the rule ... that the writ will lie in a proper case to direct a subordinate Federal court to decide a pending cause," *Insurance Co. v. Comstock*, 16 Wall. 258, 270 [21 L.Ed. 493] (1873), or to require "a Federal court of inferior jurisdiction to reinstate a case, and to proceed to try and adjudicate the same." *McClellan v. Carland*, 217 U.S. [268], at 280 [30 S.Ct. 501, 504, 54 L.Ed. 762 (1910)].
>
> In accordance with the foregoing cases, this Court has declared that because an order remanding a removed action does not represent a final judgment reviewable by appeal, "[t]he remedy in such a case is by mandamus to compel action, and not by writ of error to review what has been done." *Railroad Co. v. Wiswall*, 23 Wall. [507], at 508 [23 L.Ed. 103 (1874)]. Absent statutory prohibitions, when a remand order is challenged by a petition for mandamus in an appellate court, "the power of the court to issue the mandamus would be undoubted." *In re Pennsylvania Co.*, 137 U.S. [451], at 453 [11 S.Ct. 141, 141, 34 L.Ed. 738 (1890)]. There is nothing in our later cases dealing with the extraordinary writs that leads us to question the

---

**4.** We are not aware of any action under § 375.720 against Pennock or its officials, despite passage of nearly six years, since insolvency proceedings were instituted against Transit.

**5.** An appellate court has the power to treat this type of appeal as a mischaracterized petition for mandamus. *See Corcoran v. Ardra Ins. Co., Ltd.*, 842 F.2d 31 (2d Cir.1988).

availability of mandamus in circumstances where the district court has refused to adjudicate a case, and has remanded it on grounds not authorized by the removal statutes.

*Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 352–53, 96 S.Ct. 584, 593–94, 46 L.Ed.2d 542 (1976).

We have recognized that mandamus is a "drastic" remedy "to be invoked only in extraordinary situations." *In re Life Ins. Co. of North America,* 857 F.2d 1190, 1192 (8th Cir.1988) (quoting *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam)). We granted mandamus in that case, however, where the district court had erroneously remanded a pre-empted cause of action to a Missouri state court. We observed that "the remand order issued for a reason other than those set forth in § 1447(c) under *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Accordingly, we are not barred from review by mandamus under *Thermtron* or § 1447(d)." *Id.* at 1193 n. 1. As in *Life Ins. Co. of North America,* we deem that Pennock has demonstrated "that mandamus is the only adequate means to attain the relief it seeks." *Id.* at 1193 (footnote omitted).

> [O]nly remand orders issued under § 1447(c) and invoking the grounds specified therein—that removal was improvident and without jurisdiction—are immune from review under § 1447(d).[6]

*Thermtron,* 423 U.S. at 346, 96 S.Ct. at 590.

There is authority for the proposition that this type of case may proceed if treated as a petition for mandamus. *See e.g., Cohill,* 484 U.S. at 343, 108 S.Ct. at 614; *Thermtron,* 423 U.S. at 336, 96 S.Ct. at 584; *Corcoran,* 842 F.2d at 34. These cases, decided before amendment of the statute, held that a petition for mandamus is the proper procedure for review. We conclude that jurisdiction lies since we will treat the notice of appeal as a petition for mandamus.

## II. REMAND BASED ON ABSTENTION

### A. *General Considerations*

■ Assuming that this case may proceed under the theory of mandamus, we review the district court's decision for a "clear abuse of discretion" or a "usurpation of judicial power." *Corcoran,* 842 F.2d at 36.

Pennock argues that the district court lacked the power to remand on the basis of abstention because it was not authorized to do so under § 1447(c) which mentions only lack of subject matter jurisdiction and defects in the removal process as grounds for remand. Language in *Thermtron* supports Pennock's view that district courts lack the power to remand cases for reasons other than those listed in § 1447(c). The Court in *Thermtron* stated, "we are not convinced that Congress ever intended to extend carte blanche authority to district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute." *Thermtron,* 423 U.S. at 351, 96 S.Ct. at 593.

Despite this apparently broad statement, subsequent cases in the Supreme Court and the Courts of Appeals have determined that district courts have the authority to remand matters to state courts on grounds other than those found in § 1447(c). *See, e.g., Cohill,* 484 U.S. at 355, 108 S.Ct. at 621 (remand proper where district court declined to exercise pendant jurisdiction); *Foster,* 933 F.2d at 1213 (remand based on forum selection clause proper, though not authorized by § 1447(c)); *Corcoran,* 842 F.2d at 36–37 (remand based on abstention proper). We conclude that remand based on abstention is not unlike the remands contemplated in *Cohill, Foster* and *Corcoran* and that we have jurisdiction to consider remand based upon abstention.

We conclude that the district court had the authority to remand this case to state court based on abstention, a reason not

---

6. *Thermtron* was decided when § 1447(c) contained different language from its present form.

expressly articulated in § 1447(c). This does not mean, however, that the district court properly exercised its authority in this case. We must now examine the timeliness of the plaintiffs' motion to remand, and whether the district court correctly interpreted the grounds justifying remand under *Burford* abstention principles.

### B. *Thirty–Day Time Limit*

■ The defendant argues that the district court violated § 1447(c)'s thirty-day time limit by granting the plaintiff's "untimely" motion to remand. Pennock notes that "the amendment provides a period of thirty (30) days within which remand must be sought on *any* grounds other the lack of subject matter jurisdiction." H.R.Rep. No. 100–889, 100th Cong., 2d Sess., *reprinted in* 1988 U.S.Code Cong. & Admin.News 5982, 6033–34. Several decisions have invoked this and other legislative history to conclude that "§ 1447(c) requires that motions for remand must be made within 30 days of removal, except in cases in which the court lacks subject matter jurisdiction." *In re Shell Oil Co. (Shell II)*, 932 F.2d 1523, 1527 n. 6 (5th Cir.), *reh'g denied*, 940 F.2d 1532 (1991); *See also Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1544–46 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991). *Baris* held that the thirty-day rule applies to "formal and modal matters pertaining to the procedure for removal or the non-removability of a proceeding otherwise within federal jurisdiction." 932 F.2d at 1544. *Baris* and the other Fifth Circuit cases define procedural defect very broadly to include "any defect that does not involve the inability of the federal district court to entertain the suit as a matter of its original subject matter jurisdiction." *Id.* at 1544–45. According to these decisions, "any defect in removal procedure" includes "all non-jurisdictional defects existing at the time of removal." *In re Shell Oil Co. (Shell I)*, 932 F.2d 1518, 1522 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992). The rationale for this interpretation is to prevent parties from forum shop-ping by delaying a remand motion until the litigation in the federal court takes a wrong turn. *See Shell II*, 932 F.2d at 1526.

In contrast to the Fifth Circuit's interpretation of the thirty-day rule is *Foster*, a case in which the Third Circuit determined whether § 1447(c) applied to an "untimely" motion to remand based on a forum selection clause. *Foster* is factually somewhat similar to this case. The Insurance Commissioner of Pennsylvania sued on behalf of an insolvent insurer in that state to recover an amount due under a reinsurance agreement. The foreign defendant removed the case to federal court, and the plaintiff then moved to remand on the basis of abstention and a forum selection clause in the contract. The district court, however, remanded solely on the basis of the forum selection clause.

The defendant maintained that the thirty-day rule applied to bar the plaintiff's motion to remand because the remand was based on non-jurisdictional grounds, a forum selection clause. The *Foster* court rejected this argument based on the unambiguous language of the statute which limits the thirty-day rule to "any defect in removal procedure." *Id.* at 1213. The court concluded "that not all non-jurisdictional motions for remand are governed by the 30–day time limit." [7] *Id.* *Foster* held that a motion to remand based on a forum selection clause was not covered by the time limit of § 1447(c). Implicitly, *Foster* held that the existence of a forum selection clause was not a "defect in removal procedure."

*Foster* dealt with the remand issue in terms of whether the time-limit applied to a matter which both parties conceded was beyond the definition of the phrase, "defect in removal procedure." In contrast, *Baris* and *Shell Oil* looked to the legislative history of the amendment incorporating the thirty-day provision and decided to expand the thirty-day time limit. The Fifth Circuit's opinions concluded that the definition of "any defect in removal procedure" en-

---

**7.** The court bolstered its analysis by citing *Air–Shields, Inc. v. Fullam*, 891 F.2d 63 (3d Cir. 1989), a case relied upon by the plaintiff for the opposite conclusion.

compassed all motions for remand not based on subject matter jurisdiction. Presumably, this would include motions for remand based on abstention.

We believe that *Foster* presents the better approach to this issue. The plain meaning of "procedural defect" would seem to exclude abstention. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (indicating that the plain meaning of a statute governs over ambiguous legislative history). The legislative history should not be read so broadly as to include all non-jurisdictional matters within the ambit of "procedural defect." *Foster*, 933 F.2d at 1213. We decline, therefore, to apply the thirty-day rule to bar the plaintiff's "untimely" motion to remand based upon abstention.

### III. BURFORD ABSTENTION

The district court remanded to the state court on the basis of abstention as enunciated in *Burford*. The district court noted that in some cases courts have abstained in the context of insurance liquidation. *See e.g., Hartford Cas. Ins. Co. v. Borg–Warner Corp.*, 913 F.2d 419 (7th Cir. 1990); *Lac D'amiante du Quebec v. American Home Assurance Co.*, 864 F.2d 1033 (3d Cir.1988); *Grimes*, 857 F.2d at 699; *Corcoran*, 842 F.2d at 31. In other insurance insolvency cases, courts have refused to abstain under the circumstances of those cases. *See, e.g., University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265 (3d Cir.1991); *Bilden*, 921 F.2d at 822.

*Burford* involved an action in federal court brought by Sun Oil Co. (and another intervening complainant) which "attacked the validity of an order of the Texas Railroad Commission granting the petitioner Burford a permit to drill four wells." *Burford*, 319 U.S. at 316–17, 63 S.Ct. at 1098. The plaintiff based jurisdiction on diversity of citizenship, and the underlying claim was that the Commission's order denied complainants "due process of law." The action was brought by the parties challenging the state agency's action under "general regulatory system devised for the conservation of oil and gas in Texas, an aspect of 'as thorny a problem as has challenged the ingenuity and wisdom of legislatures.'" *Id.* at 318, 63 S.Ct. at 1099. The Supreme Court noted that "the Texas courts [were] working partners with the Railroad Commission in the business of creating a regulatory system for the oil industry." *Id.* at 326, 63 S.Ct. at 1103. The complex statutory scheme authorized the state district court in Travis County to review Commission orders.

Under these circumstances, the Supreme Court held that abstention was proper. The Court recognized the potential "confusion" and "needless conflict" resulting from federal courts' interpretation of these laws. *Id.* at 325–27, 63 S.Ct. at 1103–04. These conflicts were characterized as "dangerous to the success of state policies" in this field of regulation. *Id.* at 334, 63 S.Ct. at 1107. (There was a strong dissent joined by four members of the Court to the abstention order in *Burford*.)

As a general rule, abstention is appropriate "where a state creates a complex regulatory scheme, supervised by the state courts and central to state interests ... if federal jurisdiction deals primarily with state law issues ... [or if federal jurisdiction] will disrupt a state's efforts 'to establish a coherent policy with respect to a matter of substantial public concern.'" *Lac D'amiante*, 864 F.2d at 1043. Although abstention sounds like a potentially far-ranging concept, it is "the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair

to the State court would clearly serve an important countervailing interest.

.  .  .  .  .

Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.... In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. In *Burford v. Sun Oil Co.*, 319 U.S. 315 [63 S.Ct. 1098, 87 L.Ed. 1424] (1943), for example, the Court held that a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil wells should have been dismissed by the District Court. The reasonableness of the permit in that case was not of transcendent importance, but review of reasonableness by the federal courts in that and future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields.

*Colorado River Water*, 424 U.S. at 813–15, 96 S.Ct. at 1244–45.

In the insurance context, courts often look to the following factors which may determine the applicability of *Burford* abstention:

(1) whether the suit is based on a cause of action which is exclusively federal ...; (2) whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry ...; (3) whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues ...; and (4) whether difficult or unusual state laws are at issue. *Grimes*, 857 F.2d at 704–705.

Several of the factors indicated in *Grimes* may suggest that abstention is appropriate. There are no federal or constitutional issues involved in the plaintiff's suit and jurisdiction is premised solely on diversity jurisdiction. The issues in the case are directly relevant to the comprehensive scheme established by Missouri to govern the actions of insolvent insurers. The plaintiff proceeds under Missouri insurance laws dealing with defunct insurers or their receivers. ·See Mo.Rev.Stat. §§ 375.051 and 375.720. The action was originally brought in, and then remanded to, the Circuit Court of Cole County which has been handling Transit's litigation for over five years. Missouri has adopted the Uniform Insurers' Liquidation Act as a means to develop a system for managing insurance company failures. It has vested jurisdiction under this scheme in the Cole County Circuit Court. *See* Mo.Rev.Stat. § 375.001, *et seq.*

On the other hand, several *Grimes* factors indicate that abstention is not appropriate. The basic issues in this controversy involve a determination of the correct balance of an account, whether a net debit or a net credit exists between Transit and Pennock. Whether set-off in favor of Pennock is allowed and to what extent it may be allowed in Missouri insolvency proceedings is a clear-cut issue of law, neither particularly complex nor difficult. Although the Missouri scheme contains specialized civil and criminal penalties, it does not appear that these provisions are material to the present case.

Pennock contends that, in addition to the *Grimes* factors, the plaintiff must prove that an important local interest would be frustrated by federal court action. *See Peat Marwick Main*, 923 F.2d at 272. The defendant also maintains that the plaintiff should be estopped from obtaining remand because he has voluntarily pursued Pennock and other defendants in various forums outside the Circuit Court of Cole County. Additionally, the defendant ar-

gues that abstention is only available in equity actions, and not in this suit for a claimed account due. *See id.* at 271–72. Pennock further contends that *New Orleans Pub. Serv., Inc. (NOPSI) v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Supreme Court's most recent pronouncement on abstention, narrows the basis for *Burford* abstention.

Our decision is not governed solely by the *Grimes* factors, because the Supreme Court and several of our sister circuits have refined *Burford* abstention. *See NOPSI,* 109 S.Ct. at 2506. *NOPSI* involved a claim by a utility company that federal law governing nuclear plant costs preempted state law. The Court re-emphasized that abstention remains the *exception* to the normal handling of cases involving state issues by federal courts with proper diversity (or other) jurisdiction. *NOPSI* revisited the previously-quoted language from *Colorado River Water* stating that abstention is appropriate only where there are important state "problems of substantial public import" or where federal handling of the dispute "would be disruptive of state efforts to establish a coherent policy." *NOPSI,* 109 S.Ct. at 2514. *NOPSI* reiterated that the Court had "carefully defined ... the areas in which such 'abstention' is permissible, and it remains 'the exception, not the rule.' *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236 [104 S.Ct. 2321, 2327, 81 L.Ed.2d 186] (1984)." *Id.* at 2513. The Court also pointed out that *Burford* "does not require abstention wherever there exists [a complex state process] even in all cases where there is 'potential for conflict' with state regulatory law or policy." *NOPSI,* 109 S.Ct. at 2514 (citing *Colorado River Water,* 424 U.S. at 815, 816, 96 S.Ct. at 1245, 1246).

*Peat Marwick Main* discussed the restrictive language in *NOPSI* and reversed an abstention holding in the process, observing that there was a question as to whether the Supreme Court's narrow construction of the meaning of the McCarren–Ferguson Act phrase, "business of insurance" encompassed "state regulation of insurer insolvencies." *Id.* at 270, 271 n. 6.

The court in *Peat Marwick Main* noted that *NOPSI* did not extend *Burford* abstention principles "to cases for monetary damages." *Id.* at 272. Furthermore, it stated:

NOPSI makes clear that the mere existence of state administrative procedures, or even a complex state administrative apparatus, does not necessarily warrant abstention....

NOPSI seems particularly important in light of several recent lower court decisions expansively interpreting *Burford* abstention. For example, in [LAC], the Third Circuit held that a New Jersey federal district court should have abstained because the defendant was the subject of liquidation proceedings in New York state court. The Third Circuit characterized "the central concern" animating *Burford* as the desire to prevent needless disruption of the state regulatory scheme. But the Supreme Court's subsequent decision in *NOPSI* indicates that *Burford* abstention requires more than a desire to avoid disrupting the state regulatory system; [a mere avoidance of disruption rationale] would justify abstention in any instance where a matter was within an administrative body's jurisdiction.

*Id.* at 272 (citing E. Chemerinsky, *Federal Jurisdiction* 111–12 (Supp.1990)). These statements seem to indicate that the Third Circuit has cast doubt on the vitality of its own decision in *Lac* as a result of the Supreme Court's more recent holding in *NOPSI. Peat Marwick Main* concluded that "after *NOPSI,* federal courts should be more wary of extending the scope of *Burford* abstention." *Id.* at 272. *Peat Marwick Main*'s interpretation of *NOPSI* suggests that a district court may abstain only when exercise of federal jurisdiction would frustrate the state's regulatory system.

Our own precedent demands a narrow view of the abstention issue. In *Nucor Corp. v. Nebraska Pub. Power Dist.,* 891 F.2d 1343 (8th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990), we held that abstention was not

appropriate. We also denied *Burford* abstention in *Bilden*, holding that abstention was "the exception and not the rule," and should be used "only in the extraordinary and narrow circumstances where it would clearly serve an important countervailing interest." *Bilden*, 921 F.2d at 826. In *Bilden*, we cited *Nucor* for the following proposition:

> *Burford* abstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws. *See Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1348 (8th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990)....

*Id.* at 825–26.

We held in *Bob's Home Serv., Inc. v. Warren County*, 755 F.2d 625, 627, 628 (8th Cir.1985), that *Burford* abstention was "not appropriate," although the issue raised in federal court was "an important one to the local community and state government." In *Warren County* we directed the district court to retain jurisdiction "while allowing the parties to litigate the state law questions in the Missouri state courts" in order that a federal constitutional issue might be mooted. *Id.* at 628.

In *Ass'n for Retarded Citizens of N.D. v. Olson*, 713 F.2d 1384, 1390 (8th Cir.1983), we affirmed denial of a *Burford* claim for abstention, stating: [8]

> The Supreme Court has admonished that abstention should be used only in the extraordinary and narrow circumstances where it would clearly serve an important countervailing interest. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959).

Plaintiff has cited no case from this court approving *Burford* abstention. Although this is not determinative, we believe it is a relevant consideration because we have emphasized repeatedly the narrow and extraordinary basis for such action.[9]

We deem it significant that Melahn chose to file a separate, similar action (although claiming a lesser amount to be due) in Pennsylvania state court. In his brief, plaintiff refers to this action as "designed only to protect Transit's claim against Pennock in the unlikely event there was a jurisdictional or other procedural defect in the Missouri state court." No mention in any court proceeding indicates this basis for plaintiff's separate action subjecting plaintiff to jurisdiction of another court in another state. In *Wal–Mart Stores, Inc. v. Crist*, 855 F.2d 1326 (8th Cir.1988), an action heavily involving Transit, but brought before its insolvency, there was no effort by the receiver in either the district court or this court, after insolvency had occurred, to seek abstention or resolution of the issues despite the substantial effect the ultimate decision might have upon Transit and its assets in the liquidation proceeding in Missouri. We deem it noteworthy that the plaintiff filed a separate action in another court raising the same issues that were at stake in the state solvency proceeding sought to be removed to federal court. None of the cases cited by plaintiff notes a serious question of personal jurisdiction over a party such as Pennock, which initiated no claim in the state insolvency proceedings.

Taking into account these considerations, including the due process component of the basic jurisdiction question, we also recognize that "federal courts are not required to abstain when the criteria for abstention are met." *Bilden*, 921 F.2d at 826. As in *Bilden*, we are persuaded that "a decision on the merits" of the jurisdictional question and as to the status of the account between Transit and Pennock "would not interfere with the rehabilitator's [Melahn's] control"

---

**8.** This court also reversed a district court's holding of a *Burford* abstention in *Moe v. Brookings County,* 659 F.2d 880 (8th Cir.1981).

**9.** Plaintiff calls to our attention *Melahn v. Cigna Reinsurance Co.,* No. 91–4264–CV–9, slip op. at 3, 1992 WL 170597 (W.D.Mo. Jan. 27, 1992), a

case also involving Transit, which noted that "[t]he Eighth Circuit Court of Appeals has not addressed the question of whether a court may remand a removed case based on abstention." Relying on *Burford* and primarily *Corcoran,* the district court abstained.

of Transit, nor undercut "the 'equitable adjustment of claims ... [and] proper management of the insolvent insurer's liabilities'." *Id.* Moreover, the plaintiff has failed to prove that the exercise of federal jurisdiction would in any way frustrate the state's interests on the facts of this case.

The cases cited by the district court and Melahn to support abstention do not alter our decision that the district court should have exercised its jurisdiction in this dispute. The precedential value of *Lac D'amiante* has been undermined by the Supreme Court's more recent decision in *NOPSI* and the Third Circuit's decision in *Peat Marwick Main. Lac D'amiante,* in our view, violates the principle that "the federal courts' obligation to adjudicate claims within their jurisdiction [is] 'virtually unflagging.'" *NOPSI,* 109 S.Ct. at 2513. The district court's reliance on the holding in *Grimes* is misplaced because *Grimes* was based mainly on Second Circuit authority which "adopted a broad view of abstention." *Smith v. Metropolitan Prop. & Liability Ins. Co.,* 629 F.2d 757, 760 (2d Cir.1980). *NOPSI* does not permit a broad view of abstention. This case is not like *Hartford,* another decision relied upon by the lower court, because that case involved an attempt by creditors of an insolvent insurer to jump ahead of other creditors in state liquidation proceedings.

In summary, we reach the conclusion reached in *Bilden:*

> [T]he factors favoring abstention are simply insufficient in weight and number to overcome the strong preference for the exercise of federal jurisdiction [despite recognition] that [Missouri] has created a complex regulatory scheme to govern insurance and that these regulations serve important state interests.

*Bilden,* 921 F.2d at 827.

■ Although grant or denial of abstention is a matter of discretion, we are satisfied that it requires careful balancing of all the factors mentioned coupled with the "strong preference" for exercise of federal jurisdiction. *See Moses H. Cone Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). We are persuaded that the district court abused its discretion by abstaining in this case under the circumstances.

## IV. JURISDICTION IN THE DISTRICT COURT

Having decided that the district court should not have abstained, we will REVERSE and REMAND to the district court. We will not rule on the motion to dismiss based upon alleged lack of *in personam* jurisdiction, but REMAND that question for the initial determination by the district judge. In this connection, we conclude also that there has been no determination by the Missouri state court of this issue and that Pennock has not waived in any respect its jurisdictional position.

We accordingly REVERSE and REMAND this controversy to the district court for further proceedings consistent with this opinion.