Ron TODD, Commissioner of Insurance, Insurance Department of Kansas, as Liquidator for National Colonial Insurance Company, Plaintiff,

v.

Murray RICHMOND, in his capacity as Trustee of certain Trusts, Defendant.

No. 94–4001–SAC.

United States District Court, D. Kansas.

Jan. 26, 1994.

Miriam Glueck, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, Frank A. Caro, Jr., Richard H. Ralston, Mary Jo Shaney, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for plaintiff.

Stephen M. Kerwick, Carol A. Beier, Foulston & Siefkin, Wichita, KS, James L. Grimes, Jr., Foulston & Siefkin, Topeka, KS, Steven A. Berger, Berger, Stern & Webb, New York City, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the plaintiff's motion to remand and request for expedited decision (Dk. 7). The issue is whether the *Burford* [1] doctrine compels this court to abstain from granting equitable relief in a suit by the liquidator of an insolvent insurer to determine potential liability exposure and to recover assets. At a telephone conference held January 12, 1994, the court set filing deadlines for the defendant's response to the motion and for the court's order on it. With the filing of this order today, both deadlines are met. On the morning of January 26, 1994, approximately 8:30 a.m., the court was faxed the plaintiff's reply brief, and it has read and considered the additional arguments submitted in that pleading.

## FACTS

The plaintiff is the Kansas Commissioner of Insurance. He is the court-ordered liquidator of National Colonial Insurance Company ("NCIC"). The defendant is a New York attorney and trustee of certain New York trusts.

DSN Dealer Service Network, Inc. ("DSN"), a Delaware corporation, created the trusts which are the subject of this suit. DSN's business was to sell and administer extended warranty service contracts for itself

---

1. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

and other groups.[2] These contracts were sold by automobile and marine dealers and provided the purchasers with warranty coverage supplemental to the manufacturer's original warranty. The dealers collected the payments on the warranty service contracts. These sums covered administrative fees and insurance premiums and the rest was deposited into irrevocable trusts created by DSN and governed by trust agreements. The trust funds have been used to reimburse dealers for claims made on the service contracts. Over the years, DSN has created or contributed to at least fourteen trusts.

The trust agreements and the administration agreements with the dealer groups obligate DSN or its affiliate to obtain insurance to "guarantee" that if the trust funds were depleted then the insurer would reimburse the dealer for losses on the service contracts. In 1988, DSN, through its subsidiary, Colonial Charter Holdings, Inc., purchased NCIC, a Kansas domestic stock property, casualty and fire company. That same year, Richmond authorized loans to DSN from the program trusts totalling $11.5 million for the purchase of NCIC. DSN used NCIC to insure some of its extended warranty service contract programs. In September of 1991, Richmond authorized another loan of $3.1 million to DSN as additional capital for NCIC.

## HISTORY OF LITIGATION

On July 16, 1993, the District Court of Shawnee County, Kansas entered an agreed order of liquidation and a finding of insolvency as to NCIC. (Dk. 7, Ex. A). The order appointed the Kansas Insurance Commissioner, Ron Todd, to liquidate NCIC and to take immediate possession of NCIC's property, business and affairs for the transaction of business, to liquidate the business and affairs pursuant to K.S.A.1992 Supp. 40–3605 *et seq.*, and to take such other action as the case and interests may require. As liquidator, Ron Todd also was vested with title to all proper-

ty, assets, contracts and rights of action of NCIC; was authorized to deal as liquidator with regard to them; and was authorized to sue and defend for NCIC or for the benefit of its policyholders, stockholders and creditors "in the courts and tribunals, agencies or arbitration panels of this state and other states...." (Dk. 7, Ex. A at ¶ B). The order further required NCIC branch offices, DSN and all banks or other companies, having in their possession assets, unearned commissions, property or records of NCIC, to turn over immediate possession of them to the liquidator.

On January 3, 1994, Ron Todd as liquidator for NCIC filed in Shawnee County District Court an action against Murray Richmond as trustee of certain trusts existing under DSN's extended service warranty programs. In the verified petition, the plaintiff alleges that the trustee had made or allowed unauthorized and/or uncollateralized loans of trust funds, had commingled or allowed the commingling of trust funds, and had caused or allowed trust funds to become insufficient by reason of this unauthorized use of funds. The specifics of these misuse allegations are not relevant here. The plaintiff further alleges that the trustee has not cooperated with the liquidator and delivered possession of NCIC's property, including assets and records, or provided the requested financial information. The plaintiff contends that the trustee owes a fiduciary duty to NCIC as an intended beneficiary of the trust agreements.

The plaintiff alleges that if the trust funds prove inadequate to cover claims under existing service contracts, the risk of which may have been increased through the trustee's alleged mismanagement of the trusts, then NCIC's exposure to liability is likewise increased. From the court's view, this is the only damage theory alleged in the plaintiff's complaint.[3] The plaintiff argues that proof

---

**2.** According to the defendant, DSN has ceased active business operations.

**3.** At the telephone conference on January 12, 1994, the court asked the plaintiff's counsel if there was more than one damage theory pleaded. The counsel answered that the plaintiff's damages were not limited to NCIC's potential liability

exposure but included a theory that "money has been drained out of NCIC and put into the trust funds and likely will be preferential transfers or transfers in fraud of creditors." (Dk. 14 at 10). The plaintiff's counsel also said that this theory had been pleaded "very generally" in the verified complaint, because the defendant had denied the

of claims under service contracts have been filed directly against NCIC in the liquidation proceeding and that in California such claims may and have been made directly against NCIC.[4]

On the same day that the verified petition was filed, the plaintiff obtained a restraining order from the Shawnee County District Court. By this order, the state court found that the risk of an immediate and irreparable injury to the plaintiff existed because of the defendant withholding documents and information, loaning unauthorized amounts from the trust funds, commingling trust funds, using and transferring unauthorized amounts from the trust funds, and acting so as to jeopardize the plaintiff's ability to secure interests in trust assets and claims of the plaintiff's policyholders. The state court ordered that the trustee was not to disburse any funds in any manner inconsistent with the trust agreements, was to make weekly written reports to the court identifying disbursements from trust funds, and was to refrain from withholding the various financial information concerning the trusts that the plaintiff had requested. The state court also set a hearing on the plaintiff's request for a temporary injunction for January 12, 1994.

On January 6, 1994, the defendant filed its notice of removal (Dk. 1) in federal court alleging diversity jurisdiction. Four days later, the plaintiff filed its motion to remand and request for expedited decision. (Dk. 7). After hearing counsels' arguments at the telephone conference on January 12, 1994, the court extended a modified restraining order for ten days or until January 26, 1994,

directed defendant to respond no later than January 20, 1994, and informed the parties that a written order would be filed on January 26, 1994. These rulings were embodied in a written order filed January 25, 1994. (Dk. 18).

## MOTION TO REMAND

 The plaintiff moves the court to remand the action on the basis of *Burford* abstention. Even though abstention is neither a defect in the removal process nor an issue of subject matter jurisdiction, which are the two grounds listed for a remand pursuant to 28 U.S.C. § 1447(c), at least two circuits have found specifically that a district court has the authority to remand on abstention grounds. *Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1501 (8th Cir.1992); *Corcoran v. Ardra Ins. Co.*, 842 F.2d 31, 36–37 (2nd Cir.1988). The Tenth Circuit has reversed a district court for not abstaining and remanding a removal case. *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 700, 706 (10th Cir. 1988), *cert. denied,* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989). The court accepts that it has the authority to remand a case on abstention grounds and now must decide if it should. The proponent of *Burford* abstention has the burden to prove that the circumstances require the court's abstention. *Melahn,* 965 F.2d at 1507; *Property & Cas. Ins. v. Central Nat. Ins.*, 936 F.2d 319, 326 (7th Cir.1991).

Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96

plaintiff's counsel access to the trust records necessary to assess counsel's "information and belief." The court's review of the plaintiff's verified pleading found only one allegation that may refer to what the counsel said at the conference: "On information and belief, the money to pay back the trust loans has been drained from NCIC, so that in effect NCIC is paying back the trust loan with money that should be added to [trust] reserves." (Dk. 7, Ex. B, ¶ 25(a)). Other than they both use the same term that NCIC's assets were being "drained," the court cannot square the allegations in the complaint with what the plaintiff's counsel said. Moreover, the court does not understand the notion of assets being "drained" if NCIC's assets were used to pay NCIC's valid debts. The plaintiff's complaint

alleges nothing to suggest a fraudulent or preferential transfer of NCIC's assets. The court is quite sure that the verified complaint is a far cry from what Rule 9(b) requires for a fraud claim.

4. During the same telephone conference, the court also asked the plaintiff's counsel for the total number and value of such claims that had been filed. The plaintiff's counsel estimated the number of claims to be a dozen but was unable to estimate the total value other than saying that one claim was for $700 and "several others out of California that are a couple of thousand dollars." (Dk. 14 at 8). On the court's inquiry, the defendant's counsel volunteered that trust funds totaling $4,000,000 were available to pay claims that are insured by NCIC. (Dk. 14 at 9).

S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). There are certain cases, however, where a federal court has the discretion to abstain from granting equitable relief because it would unduly interfere with state matters. *New Orleans Public Service, Inc. (NOPSI) v. Council of City of New Orleans,* 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989). Abstention is not the rule but the exception, and it is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244. Though a concept that sounds far-reaching, abstention is "justified . . . only in exceptional circumstances." *Id.* The Supreme Court has "carefully defined" the instances when abstention is proper. *NOPSI,* 491 U.S. at 359, 109 S.Ct. at 2513.

■ Of the four recognized types of abstention,[5] the only one now before the court is *Burford* abstention. In *Burford,* the oil company brought a diversity action in federal court attacking a drilling permit order of the Texas Railroad Commission as invalid under state law and in violation of federal due process rights. 319 U.S. at 316–17, 63 S.Ct. at 1098–99. The Supreme Court commented on the complexity and importance of the oil field regulatory scheme and observed that Texas had a procedure for centralized review of these regulatory orders. *Id.* at 318–27, 63 S.Ct. at 1099–1104. Finding the state courts provided "expeditious and adequate" review, *id.* at 334, 63 S.Ct. at 1107, and recognizing the federal courts offered the potential for needless confusion, conflict and delay, *id.* at 327, 63 S.Ct. at 1104, the Court held that "a sound respect for the independence of state action requires the federal equity court to stay its hand," *id.* at 334, 63 S.Ct. at 1107. In short, *Burford* abstention represents a

respect for state sovereignty and a restraint on federal courts' deciding difficult questions involving basic problems of state policy pertaining to the regulation of important state concerns.

Recently, the Supreme Court "distilled the principle now commonly referred to as the '*Burford* doctrine'" to the following terms:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*NOPSI,* 491 U.S. at 361, 109 S.Ct. at 2514 [6] (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244). It is "widely recognized" that *NOPSI* has "reformulated *Burford* abstention." *Clark v. Milam,* 813 F.Supp. 431 (S.D.W.Va.1993); *see Fragoso v. Lopez,* 991 F.2d 878, 882 (1st Cir.1993) ("*NOPSI* cabins the operation of the *Burford* doctrine"); *Melahn v. Pennock Ins., Inc.,* 965 F.2d at 1505 (*NOPSI* refines *Burford* abstention); *University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 272 (3rd Cir.1991) (*NOPSI* provides "'welcome clarification of *Burford* abstention.'") (quoting Erwin Chemerinsky, *Federal Jurisdiction* 111–12 (Supp.1990)). Indeed, "the radius of permissible *Burford* abstention has shrunk in recent years." *Doughty v. Underwriters at Lloyd's,*

---

5. These are *Pullman* abstention, *Railroad Commissioner v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford* abstention, *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Colorado River* abstention, *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975); and *Younger* abstention, *Younger v. Harris* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

6. In *NOPSI,* a local utility petitioned in state court for review of the City Council's order par-

tially denying the utility's requested rate increase. The utility also filed a parallel proceeding in federal court seeking declaratory and injunctive relief and arguing the City Council's order was pre-empted by federal law. The Supreme Court held that the district court erred in abstaining under *Burford* because the preemption claim did not involve state law and could be resolved without unduly intruding into state government or undermining the state's ability to handle local problems.

*London,* 6 F.3d 856, 866 (1st Cir.1993) (citations omitted).

Several propositions emerge from *NOPSI* which rein in *Burford* abstention and call into question the broader applications of this doctrine in prior case law. *Burford* abstention is not required just because complex state administrative processes exist. *NOPSI,* 491 U.S. at 362, 109 S.Ct. at 2515. While it rests on the concern that federal courts not unduly intrude into state governmental processes, *Burford* abstention is not required in all cases having the " 'potential for conflict' with state regulatory law or policy." *NOPSI,* 491 U.S. at 362, 109 S.Ct. at 2515 (quoting *Colorado River,* 424 U.S. at 816, 96 S.Ct. at 1245). In other words, the doctrine "requires more than a desire to avoid every inconvenience to or disruption of a state's regulatory systems." *Fragoso,* 991 F.2d at 885; *see University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d at 272 (citing Erwin Chemerinsky, *Federal Jurisdiction* 111–12 (Supp.1990)). Finally, careful attention is given to whether the exercise of federal jurisdiction would frustrate the state's regulatory efforts to maintain the desired uniform treatment of matters distinctively local in nature. *NOPSI,* 491 U.S. at 362–64, 109 S.Ct. at 2515–16. In short, *NOPSI* is the shot across the bow warning courts against extending *Burford* and causing courts to question the directions offered by pre-*NOPSI* precedent. *University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d at 273; *see Fragoso v. Lopez,* 991 F.2d at 884 n. 9.

The abstention doctrine stated in *NOPSI* breaks down into these basic elements: (1) the federal court is "sitting in equity"; (2) "timely and adequate state-court review is available"; (3) there is the potential for interference "with proceedings or orders of state administrative agencies"; and (4) there are involved either: (a) "difficult questions of state law bearing on policy public problems of substantial public import whose importance transcends the result in the case at bar," or (b) federal court disruption "of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Because the first two elements are satisfied on the face of the pleadings here and are not challenged by the defendant, the court will not address them. As for element four, the plaintiff has not identified any difficult, far-reaching questions of state law that transcend the result in this case. Thus, the principal question under that element will be whether this court's exercise of jurisdiction would disrupt the state efforts to create and maintain a coherent policy on liquidating insolvent insurance companies.[7]

The court is not writing on a clean slate in addressing *Burford* abstention in the insurance liquidation context. In its own circuit, one of the leading decisions can be found, *Grimes v. Crown Life Ins. Co.,* 857 F.2d 699 (10th Cir.1988). In *Grimes,* the Oklahoma Insurance Commissioner, as liquidator of an insolvent insurance company, brought a declaratory judgment action against another insurance company regarding the terms of a reinsurance agreement between the insolvent insurer and the reinsurer. The Tenth Circuit held that the district court erred in not abstaining under *Burford* to exercise jurisdiction. The Tenth Circuit recognized that "most federal courts have declined to exercise jurisdiction in disputes like this one which present themselves in the larger context of state liquidation proceedings." 857 F.2d at 704 (citations omitted). The Tenth Circuit did not rule out the propriety of exercising federal jurisdiction when a complex regulatory scheme is present and suggested some of the relevant factors to consider:

(1) whether the suit is based on a cause of action which is exclusively federal, (citation omitted); (2) whether the suit requires the court to determine issues which are direct-

---

7. The defendant first argues that element three is not met because the Insurance Commissioner as receiver or liquidator is an agent of the court and the Kansas insurance law scheme for liquidation creates something resembling a judicial structure more than an administrative agency. *See Fragoso v. Lopez,* 991 F.2d 878, 883 (1st Cir.1993).

The defendant also maintains that no administrative agency order is before the court for review in this case. *See Bradford v. Moench,* 809 F.Supp. 1473, 1478 (D.Utah 1992). Both arguments have merit, but not enough for the court to rest its ruling on.

ly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry (citations omitted); (3) whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues (citations omitted); and (4) whether difficult or unusual state laws are at issue (citations omitted). 857 F.2d at 705. In applying these factors, the court first commented on Oklahoma's Uniform Insurers Liquidation Act and on the provisions granting exclusive jurisdiction of delinquency proceedings to the Oklahoma County District Court. 857 F.2d at 705. Besides a complex and comprehensive scheme for insurance liquidation, Oklahoma had established a particular forum for overseeing the proceedings. *Id.* The court next remarked that the issues were controlled by state law with the "fundamental dispute" being "whether the reinsurance contract complies with the requirements of" an Oklahoma statute. 857 F.2d at 705. In resolving that dispute, a court would have to determine a important policy question fundamental to Oklahoma insurance law: whether the Commissioner's approval of the reinsurance agreement in the first instance affects the Commissioner's ability to collect on the reinsurance agreement or the judicial interpretation of that agreement. *Id.* The Tenth Circuit identified another significant state law issue, that is, whether a reinsurer's statutory right to offset in a liquidation proceeding also applied in a declaratory judgment action. 857 F.2d at 706. The court concluded that the exercise of federal jurisdiction here "would disrupt the ability of the state officers of Oklahoma in conjunction with the Oklahoma County District Court to devise and efficiently operate a complex system of administrative and judicial interrelationships which makes up the statutory scheme for liquidating insolvent insurers in Oklahoma." 857 F.2d at 706.

The defendant points out that *Grimes* is one of the suspect pre-*NOPSI* cases, along with *Lac D'Amiante du Quebec v. American Home Assur. Co.*, 864 F.2d 1033 (3rd Cir. 1988) (*Burford* abstention required in indemnity action against insolvent insurer who was under the protection of state insurance laws), that the plaintiff relies on in its motion. The Eighth Circuit in *Melahn* has directly challenged the precedential value of *Grimes*. It first said that the factors in *Grimes* were not exclusive ones governing its decision and then criticized *Grimes* as adopting a broader view of abstention than the Supreme Court had later allowed in *NOPSI*. 965 F.2d at 1505, 1507; *see American Security Life Assur. Co. v. Mason,* 836 F.Supp. 333, 334–35 (E.D.N.C.1993); *Clark v. Milam,* 813 F.Supp. at 434 n. 1. *American Home* has fared even worse. The Third Circuit itself has relegated this case to the category of suspect precedent. *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d at 271–72 (*American Home* uses a formulation of *Burford* abstention that is more expansive than that espoused in *NOPSI* ). The First Circuit has gone so far as to conclude that *American Home* "is no longer good law." *Fragoso,* 991 F.2d at 884 n. 9 (citing Erwin Chemerinsky, *Federal Jurisdiction* 111–12 (Supp.1990)); *see Melahn,* 965 F.2d at 1505, 1507.

Because abstention is foremost a factual inquiry, the precedential worth of a case largely depends on whether its facts are distinguishable from the instant case. Patterns among the precedent emerge by tracing certain significant circumstances. For example, courts generally abstain from suits against the insolvent insurer or its legal representative:

> [C]ourts abstain in suits against insolvent insurance companies for the same reasons that district courts refer bankruptcy cases to the bankruptcy courts: Insurance companies tend to issue identical policies to a large number of people, rendering a single forum necessary to dispose equitably of the company's limited assets so as to avoid a race to the courthouse.

*Grode v. Mutual Fire, Marine and Inland Ins. Co.,* 8 F.3d 953, 960 (3rd Cir.1993); *see, e.g., American Home,* 864 F.2d at 1048; *Law Enforcement Ins. Co., Ltd. v. Corcoran,* 807 F.2d 38, 43–44 (2nd Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987). For that matter, the federal courts often abstain in circumstances where one creditor attempts to jump ahead other creditors of the insolvent insurer by bringing a

lawsuit outside of the liquidation proceedings. *See, e.g., Barnhardt Marine Ins. v. New England Intern. Sur.,* 961 F.2d 529, 532 (5th Cir.1992); *Hartford Ins. Co. v. Borg–Warner Corp.,* 913 F.2d 419, 426 (7th Cir. 1990). When the liquidator or rehabilitator brings the suit on behalf of the insolvent insurer to recover an asset, the courts generally focus on whether the suits entail deciding complicated issues of state regulatory law or issues important to a state's effort to establish a coherent policy on a substantial public concern. *See, e.g., Grode,* 8 F.3d at 959–60; *Melahn,* 965 F.2d at 1504–07; *Grimes,* 857 F.2d at 705–06; *But see Corcoran v. Ardra Ins. Co., Ltd.,* 842 F.2d at 37. In assessing these patterns, one must be mindful "that the circuit court cases favoring abstention in insurer insolvency matters are suspect in light of *NOPSI.*" *Fragoso,* 991 F.2d at 884.

■ *Burford* abstention demands "a very careful and fact-specific inquiry." *Property & Cas. Ins. v. Central Nat. Ins.,* 936 F.2d at 326 n. 13 (citations omitted). The decision whether to abstain is not made upon a mechanical application of a checklist of factors. *Bilden v. United Equitable Ins. Co.,* 921 F.2d 822, 827 (8th Cir.1990); *see Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). Rather, it involves carefully balancing the important factors realizing that the weight of any one factor depends on the individual case and that the balance of factors begins weighted heavily in favor of federal jurisdiction. *Moses H. Cone Hospital,* 460 U.S. at 16, 103 S.Ct. at 937.

■ Kansas has a uniform and comprehensive statutory scheme governing the liquidation of insolvent insurers. K.S.A. 40–3605 *et seq.* The provisions of this scheme direct the appointment of the Kansas Insurance Commissioner as liquidator who will "take possession of the assets of the insurer" and "administer such assets under the general supervision of the court." K.S.A. 40–3622. The scheme requires the cooperation of those exercising control over the insolvent insurer's affairs. A person who exercises control or authority over the insolvent insurer's affairs or activities, directly or through a holding company or other affiliate, must cooperate with the liquidation proceeding by, *inter alia,* making available to the commissioner "any books, accounts, documents or other records or information or property of or pertaining to the insurer and in the insurer's possession, custody or control." K.S.A. 40–3610(a)(2). The statutory scheme further specifies that the venue for all delinquency proceedings is the Shawnee County District Court. This provision puts the Shawnee County District Court in "a special relationship of cooperation, technical oversight and concentrated review with" the Kansas Insurance Commissioner "in the process of liquidating insurers. *Grimes,* 857 F.2d at 705.

*Burford* abstention is not required "whenever there exists" a complex administrative process. *NOPSI,* 491 U.S. at 362, 109 S.Ct. at 2515. That the liquidator is to take possession of the insolvent insurer's assets and that others must cooperate with the liquidator are simple concepts requiring no technical understanding of the Kansas statutory scheme for liquidating insurers. The plaintiff does not suggest that the court will be called upon to make a difficult or first impression interpretation of these statutory provisions. Nor will the court be required to review decisions made by the liquidator or the liquidation court. Most importantly, the facts of this case do not indicate that the court will be asked to apply these provisions in any manner that "would be disruptive of state efforts to establish a coherent policy." *NOPSI,* 491 U.S. at 361, 109 S.Ct. at 2514.

The real issues here are not with the interpretation or application of the Kansas liquidation laws but with the factual and legal bases for the plaintiff's claims to the trust assets. The plaintiff alleges that the trust agreements set out the terms of NCIC's involvement as an insurer and impose on the trustee certain legal duties to NCIC. As now pleaded, the plaintiff's claim of a property interest in any trust assets depends not on Kansas insurance law but on the terms of a trust agreement and the state law governing those agreements. The plaintiff does not respond to the defendant's critical point that "[w]hether the Liquidator has a contingent, inchoate interest in the trust fund assets, and

whether Mr. Richmond breached his fiduciary duty, if any, to NCIC (*e.g.,* as a third-party beneficiary), are questions of New York, not Kansas law." (Dk. 16 at 23). The defendant's position is based in part on the choice of law clauses which appear in the trust agreements. The court is convinced that the fundamental issues here can be resolved without having a "significant familiarity with ... distinctively local regulatory facts or policies" of Kansas. *NOPSI,* 491 U.S. at 363–64, 109 S.Ct. at 2516. In fact, the court could say here what the Third Circuit said in *Grode:*

> Although the regulation of insolvent insurance companies is surely an important state interest, this case does not involve the complex and highly regulated issues of insurance regulation; rather, it is a simple contract action involving an allegedly unpaid debt. The complex regulations relating to insolvent insurance companies have to do with plans of rehabilitation and payment to policy holders. Simple contract and tort actions that happen to involve an insolvent insurance company are not matters of important state regulatory concern or complex state interests.

8 F.3d at 959 (footnote omitted). The plaintiff has not demonstrated that this case is really much more than disputes over trust agreements and the legal relationships arising from them, both of which appear to be governed by New York law.

The plaintiff argues that "the extent to which Plaintiff is able to recover funds in the liquidation proceedings will directly affect the ability of Plaintiff to satisfy NCIC's creditors. These proceedings should be left to the Shawnee County District Court for resolution in the larger proceeding." (Dk. 8 at 13). This argument is a mere restatement of a factor found in *Corcoran v. Ardra Ins. Co., Ltd.,* 842 F.2d at 37, and later quoted by the Tenth Circuit in *Grimes,* 857 F.2d at 706. The relative importance of this factor in either court's decision is, at best, a debatable matter. The mere fact that a federal court decision may have some impact on a state process or policy does not require abstention. *NOPSI,* 491 U.S. at 363, 109 S.Ct. at 2515–16. Reading them in light of *NOPSI,* the

*Grimes* and *Ardra* should be relied on more for their discussion of another factor, that is, there are questions important to the state regulatory scheme involved. In both cases, the liquidator's authority to collect on the reinsurance agreements were substantial and unresolved issues of state law. *Grimes,* 857 F.2d at 706; *Ardra,* 842 F.2d at 37. The plaintiff cannot point to any issues in this case which would have a similar importance to Kansas's regulatory scheme for liquidating insurance companies.

The plaintiff further contends that the exercise of federal court jurisdiction would interfere with the Kansas's policy to have a single, unified liquidation proceeding and would encourage others to evade this state proceeding. The plaintiff's sweeping argument fails to show how the federal court's jurisdiction would be a "disruption" to the liquidation proceedings. "*Burford* abstention requires more than a desire to avoid every inconvenience." *Fragoso,* 991 F.2d at 885. As the plaintiff and not the defendant, the insolvent insurer here is not being forced " 'to dissipate its funds *defending* unconnected suits across the country.' " *Grode,* 8 F.3d at 960 (quoting *American Home,* 864 F.2d at 1045). A federal court decision on the plaintiff's claims as now pleaded would have, at best, an indirect, and probably minimal, effect on how NCIC's potential liability exposure is calculated during the liquidation proceedings. This effect would "neither discombobulate local proceedings nor frustrate the" state's regulatory system. *Fragoso,* 991 F.2d at 884. Finally, this is not a case where a creditor of the insolvent insurer evades the liquidation proceeding in order to get some jump or priority over the other creditors. The plaintiff does not show that there are a number of parties similarly situated to the defendant ready to remove their cases to federal court if jurisdiction is exercised here. This suit presents no real threat to the state's control over the equitable distribution powers to policyholders and creditors of the insolvent insurer.

In sum, the court finds that this case is a close one but that the plaintiff has not carried its burden of persuading the court on the appropriateness of *Burford* abstention.

The plaintiff's arguments essentially advocate a per se rule of abstention if a party to the suit is the insolvent insurer or its court-appointed representative regardless of whether the suit involves matters of important state policy or law. The Tenth Circuit in *Grimes* did not adopt such a rule, and the precedent cited by the plaintiff and found by the court, particularly *NOPSI, Grode,* and *Melahn,* do not support such a sweeping proposition. Abstention remains a matter of judicial discretion exercised in the context of the relevant facts and circumstances.

The factors favoring abstention here are without the weight and number to defeat the strong preference in favor of exercising federal court jurisdiction. *Bilden,* 921 F.2d at 827. The central substantive issues do not implicate important public policy problems for Kansas, do not present complex questions or interpretation disputes of Kansas insurance law, do not require significant familiarity with local regulatory facts and policies, do not require the court to review the decisions of the liquidator or the liquidation court, and do not appear to even be governed by Kansas law. The case can be decided without undermining the liquidator's control of NCIC and the liquidator's equitable distribution powers over the estate, without subjecting the liquidator to expensive, time-consuming and expansive litigation in multiple forums outside of the liquidation proceeding, and without disrupting the state's establishment of a coherent policy for liquidation proceedings.

IT IS THEREFORE ORDERED that the plaintiff's motion to remand on *Burford* abstention grounds is denied.