Ron **TODD**, Commissioner of Insurance, Insurance Department of Kansas, as Liquidator for National Colonial Insurance Company, Plaintiff,

v.

Murray **RICHMOND**, in his capacity as Trustee of certain Trusts, Defendant.

No. 94–4001–SAC.·

United States District Court, D. Kansas.

May 3, 1994.

Miriam Glueck, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, Frank A. Caro, Jr., Richard H. Ralston, Mary Jo Shaney, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for plaintiff.

Stephen M. Kerwick, Carol A. Beier, Foulston & Siefkin, Wichita, KS, James L. Grimes, Jr., Foulston & Siefkin, Topeka, KS, Steven A. Berger, Berger, Stern & Webb, New York City, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The plaintiff moves this court to reconsider (Dk. 29) its order of January 26, 1994, (Dk. 19) which denied the plaintiff's motion to remand this case to the District Court of Shawnee County, Kansas. *See Todd v. Richmond,* 844 F.Supp. 1422 (D.Kan.1994). The facts of this case are fully set forth in that order, and those readers interested in them should refer to that order.

## BACKGROUND

For present purposes, only a limited background is necessary. DSN Dealer Service Network, Inc. (DSN) sold and administered extended warranty service contracts. Automobile and marine dealers sold to consumers these contracts that provided warranty coverage supplemental to the manufacturer's original warranty. Most of the proceeds from these contracts were deposited into irrevocable trusts from which the dealers were later reimbursed for claims made on the service contracts. As required by the trust agreements and the administration agreements with the dealer groups, DSN obtained insurance that guaranteed the dealers would be reimbursed for losses on services contract in the event the trust funds were depleted. In 1988, DSN, through its subsidiary, Colonial Charter Holdings, Inc., purchased the National Colonial Insurance Company (NCIC), a Kansas domestic stock property, casualty and fire company. DSN insured some of its extended warranty service contract programs with NCIC.

In July of 1993, the District Court of Shawnee County, Kansas entered an agreed order of liquidation and a finding of insolvency as to NCIC. The court appointed the Kansas Insurance Commissioner, Ron Todd, to liquidate NCIC and to take immediate possession of NCIC's property, business and affairs for the transaction of business, to liquidate the business and affairs pursuant to K.S.A.1992 Supp. 40–3605 et seq., and to take such other action as the case and interests involved may require.

On January 3, 1994, the plaintiff as the court-appointed liquidator of NCIC brought this action seeking access to information, an accounting and damages against the defendant, Murray Richmond (Richmond), as trustee of certain trusts existing under DSN's extended service warranty programs. The plaintiff alleges in his petition that the defendant's mismanagement of the trust funds has increased the risk that the funds will be insufficient to pay contract claims. The specific allegations of mismanagement are found in the plaintiff's petition at ¶¶ 25, 27, and 28. The plaintiff further alleges that NCIC is an intended beneficiary of the trust agreements and that the defendant owes NCIC a fiduciary duty. As for NCIC's liability exposure, the plaintiff's allegations are best summarized at ¶¶ 32 and 33:

32. The trust funds may be inadequate to cover claims made under extended service contacts (sic) and, based on Trustee Reports and other documents and information, Richmond's management of the trust funds has increased the risk that the trust funds will be inadequate to pay for claims, thus increasing NCIC's risk of exposure to pay claims.

33. Proofs of claim have been filed against NCIC in this liquidation for claims arising under the extended service contracts, directly exposing NCIC to liability for which the trust funds are to be used.... On information and belief, additional proofs of claim will be filed against NCIC in connection with the extended service contract business.

The plaintiff seeks as relief an order: (1) restraining the defendant from disbursing funds contrary to the trust agreements; (2) requiring the defendant to prepare weekly reports identifying trust fund receipts and disbursements; (3) compelling the defendant's production and disclosure of various records and information concerning the trusts; (4) removing the defendant as trustee and replacing him with an interim trustee; (5) requiring an accounting of the trusts, an actuarial analysis of what amounts should be held to pay claims for which NCIC could be liable, and an analysis of whether the trust funds are adequate to meet projected claims; (6) setting up and segregating a portion of the trust funds as reserves for NCIC; and (7) awarding damages to NCIC and its policyholders and creditors for the defendant's mishandling of the trusts and disgorgement of profits.

## PRIOR ORDER

The court fully explained its reasons for denying the plaintiff's motion to remand in a twenty-four page order. See Todd v. Richmond, 844 F.Supp. 1422 (D.Kan.1994). The court first agreed with the plaintiff that a district court has authority to remand on the

basis of *Burford*[1] abstention. (Dk. 19 at 7). The court then noted the general principles that regard abstention as a narrow exception to a federal court's duty to adjudicate. Abstention is proper only in those situations that have been carefully defined by the Supreme Court. (Dk. 19 at 8). The court then turned to *Burford* abstention and quoted the Supreme Court's recent distillation of that doctrine found in *New Orleans Public Service, Inc. (NOPSI) v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989). (Dk. 19 at 9–10). The court fell in line with the majority of courts that have read *NOPSI* as reining in *Burford* abstention and as casting doubt thereby on pre-*NOPSI* precedent. (Dk. 19 at 11–12). The court detailed the facts and holding in *Grimes v. Crown Life Ins. Co.,* 857 F.2d 699 (10th Cir.1988), *cert. denied,* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989) in which the federal district court was reversed for not abstaining from a declaratory judgment suit filed by the liquidator of an insolvent insurance company against another insurer concerning the terms of a reinsurance agreement. (Dk. 19 at 13–14). The court then referred to those cases that had challenged the precedential value of *Grimes* and *Lac D'Amiante du Quebec v. American Home Assur. Co.,* 864 F.2d 1033 (3rd Cir. 1988), in light of the narrower formulation of *Burford* abstention found in *NOPSI.* (Dk. 19 at 15–16).

After noting that abstention is foremost a factual inquiry and that the precedent must be read with this in mind, the court focused on the factors relevant to this case. (Dk. 19 at 16–17). The court summarized its analysis of those factors, as follows:

> The central substantive issues do not implicate important public policy problems for Kansas, do not present complex questions or interpretation disputes of Kansas insurance law, do not require significant familiarity with local regulatory facts and policies, do not require the court to review the decisions of the liquidator or the liquidation court, and do not appear to even be governed by Kansas law. The case can be decided without undermining the liquidator's control of NCIC and the liquidator's equitable distribution powers over the estate, without subjecting the liquidator to expensive, time-consuming and expansive litigation in multiple forums outside of the liquidation proceeding, and without disrupting the state's establishment of a coherent policy for liquidation proceedings.

(Dk. 19 at 23–24). The court concluded that the "case is a close one but that the plaintiff ... [had] not carried its burden of persuading the court on the appropriateness of *Burford* abstention." (Dk. 19 at 22).

## STANDARDS FOR MOTION TO RECONSIDER

■ A motion to reconsider gives the court an opportunity to correct manifest errors of law or fact and to review newly discovered evidence. *Harsco Corp. v. Zlotnicki* 779 F.2d 906, 909 (3rd Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). A motion to reconsider is appropriate if the court has obviously misapprehended a party's position, the facts, or applicable law, or if the party produces new evidence that could not have been obtained through the exercise of due diligence. *Comeau v. Rupp,* 810 F.Supp. 1172, 1175 (D.Kan.1992); *see Refrigeration Sales Co. Inc. v. Mitchell–Jackson, Inc.,* 605 F.Supp. 6, 7 (N.D.Ill.1983), *aff'd,* 770 F.2d 98 (7th Cir. 1985). A motion to reconsider is not appropriate if the movant only wants the court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally. *Comeau v. Rupp,* 810 F.Supp. at 1175.[2] "[A] party's

---

1. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

2. The plaintiff faults the defendant for taking the standards for a motion for reconsideration from cases deciding motions under Rule 59(e) of the Federal Rules of Civil Procedure. The plaintiff sees a difference between a motion to reconsider as filed in this case and a motion to reconsider as filed under Rule 59. When a motion to reconsider, like his, is filed on a non-dispositive order entered even before discovery has commenced, the plaintiff believes the appropriate standard is more deferential and does not penalize the movant for failing to make his best argument first. The precedent in this district does not sustain any such distinction in motions to reconsider.

failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend." *Paramount Pictures Corp. v. Video Broadcasting Sys., Inc.,* No. 89–1412–C, 1989 WL 159369, at *1, 1989 U.S. Dist. LEXIS 15684, at *2 (D.Kan. Dec. 15, 1989) (Denied plaintiff's motion to alter and amend the court's order denying the plaintiff's motion for a preliminary injunction).

The defendant takes issue with the procedural propriety of the plaintiff's motion to reconsider. The defendant rightly points out that the plaintiff's primary arguments in support of reconsideration are new and that the plaintiff's original memorandum in support of remand was a *pro forma* brief. Only in his reply brief did the plaintiff attempt to address *NOPSI* and its effect on *Burford* abstention. As for the presence of any complicated issues of Kansas insurance law, the plaintiff's original and reply briefs said they existed but did not identify them in any meaningful fashion.

■ It bothers the court that the plaintiff waited till its reply brief to confront *NOPSI* and waited till now to sharpen its analysis of the pertinent factors. The plaintiff's original memorandum did not make the best arguments available to the plaintiff, and it did not cite the current law on *Burford* abstention. The brief appeared to be nothing more than a quick adaptation of a form brief that avoided tackling the principles emerging from *NOPSI* and its progeny. Neither it nor the reply brief offered the fact-intensive inquiry required in *Burford* abstention cases. Instead, the memoranda emphasized the presence of a complex and comprehensive insurance regulatory scheme and the possibility of this case affecting the plaintiff's ability to satisfy NCIC's creditors. The

court's impression from the memoranda was that the plaintiff believed the facial weight of these two factors was enough for *Burford* abstention. Moreover, the plaintiff discussed these factors and the others in conclusory terms leaving out the details on what direct impact this suit would have on NCIC's liquidation proceedings and what particular insurance law issues would be common to this suit.[3]

The court considered summarily denying the plaintiff's motion to reconsider because of these procedural defaults. On further reflection, the court realized the policy reasons behind *Burford* abstention were too important and far-reaching. The court believes now that this case raises significant issues of insurance law which should be remanded for decision in the state forum. The court denies the plaintiff's request for fees and costs pursuant to 28 U.S.C. § 1447(c) because of the above-noted procedural defaults made by the plaintiff and because of the genuine legal issues raised by the defendant.

**MERITS**

■ The court can find no error in its prior discussion of the relevant law, despite the plaintiff's arguments to the contrary. The court will limit its discussion to several general comments. For the plaintiff's information, the cases cited in his reply brief and motion for reconsideration were read and considered by the court in rendering its decision on January 26, 1994. The court did not cite those cases because they were either distinguishable on the facts or lacking precedential force and value. One or more of those cases failed to address and acknowledge any effect from *NOPSI*. Moreover, the court believed those cases added little to the body of precedent already cited in its order.

---

The point is proved by the very cases that the plaintiff cites for the appropriate standard for his motion to reconsider, *Weese v. Schukman,* 148 F.R.D. 279 (D.Kan.1993); *Comeau v. Rupp,* 810 F.Supp. 1172, 1175 (D.Kan.1992). In both cases, Judge Belot commented on the inappropriateness of revisiting issues that were decided or hearing new arguments or facts that could have been presented with a diligent effort. To discourage piecemeal presentation of arguments and facts, courts employ such a rule as to all motions to reconsider.

**3.** The court cannot help noticing that the plaintiff sees the case as involving much more than has been alleged in the state court petition or discussed in its earlier memoranda. Indeed, the plaintiff did little through those pleadings to dispel the defendant's effort at painting this case as a simple dispute arising from trust agreements controlled by New York law.

The plaintiff charges the district court with departing from the rule enunciated in *Grimes* in favor of a reformulated standard. The plaintiff misapprehends the court's order. In saying what it did about *Grimes* and *American Home*, the court acknowledged but did not adopt what had been said by other circuit courts. This court eschewed taking any stance on the validity of *Grimes* and, at one point, simply questioned a broad reading of *Grimes* after *NOPSI*.[4] For the record, this court agrees with those circuit courts that any precedent decided before *NOPSI* should be construed in light of what the Supreme Court later held. For example, *NOPSI* calls into doubt any holding that *Burford* abstention is appropriate whenever the federal court litigation would have some impact on a state process or policy or whenever there exists a complex administrative process. Courts now must inquire into and evaluate the nature and extent of any asserted impact on the state regulatory scheme.

The plaintiff is correct, however, that the court misapprehended the factual and legal basis of the plaintiff's intended[5] case. The court believed this case was a dispute principally over what legal interests or rights the liquidator could claim to the trust funds by virtue of the trust agreements.

The plaintiff now sees his case in a much broader light with another central issue being: "the relationship between the trusts, NCIC, claimants who have already made their claims, and potential claimants whose claims arise out of the extended service warranty programs." (Dk. 30 at 11–12). The plaintiff also believes this issue will require interpretation of several issues under Kansas' uniform scheme for liquidating insolvent insurers, K.S.A. 40–3605 *et seq.:*

> For example, does the plaintiff have an "interest in assets" in the trust monies under § 40–3609 sufficient to permit their inclusion in the insolvent estate for the purpose of paying claims? Is the trustee liable for payment of claims which arise after the bar date established under the Kansas Act? When does the claim of a warranty holder sufficiently crystalize for the purpose of making a cognizable claim? Will the trustee be required to pay claims for covered automobile repairs which are performed after the bar date provided by the Statute? If a warranty holder does not receive actual notice of the insolvency, and he or she does not make a timely claim, is his or her claim against the trusts forever barred?
>
> These questions involve the trustee. Now, however, because the trustee is a party to a federal action, and not in the state receivership proceeding, this Court will be called upon to decide many of these issues which involve the relationship between the warranty holders and the insolvent company, issues which directly affect the administration of the liquidation proceedings in the Shawnee County District Court.

(Dk. 30 at 13–14). The defendant argues these Kansas insurance law issues are neither so complex nor so important to the development of that law as to "trump" this court's obligation to exercise jurisdiction. (Dk. 36 at 15).

The issues now raised by the plaintiff are not the centerpiece of this litigation, but they do appear as questions that must be answered in any resolution. As discussed above, the plaintiff's suit is primarily concerned with challenging the propriety of the trustee's actions. Still, the plaintiff's claimed interest in the trust funds and right to any relief will depend upon the plaintiff showing

---

4. Throughout these proceedings, the plaintiff has read *Grimes* much too broadly and *NOPSI* much too narrowly. As with most Supreme Court precedent, *NOPSI* deserves a broad reading, particularly its general discussion of *Burford* abstention and its observations on the relative weight of different factors. It is myopic to say that *NOPSI* is limited to its facts and does not apply to insurance liquidation cases. Consequently, logic compels reading *Grimes* as a pre-*NOPSI* precedent.

5. The emphasis here is on "intended." While his complaint is simple enough, the plaintiff, throughout the remand proceedings, has gone to great lengths to shroud the claims in the "mysteries" and "arcana" of insurance law and liquidation proceedings in particular. Up to now, those efforts were not persuasive because the facts and specific arguments showed otherwise.

a real likelihood of liability exposure to warranty contract holders. Liability exposure cannot be determined without knowing the actual and projected amount of valid claims made by warranty contract holders during the liquidation proceeding and later. The determination of which claims are valid is when many of the above issues will be addressed. The defendant does not seriously dispute that these issues may need to be decided during this litigation.

In all likelihood, the state court will decide the same issues during the liquidation process, thus creating the possibility for different rulings and the injustice resulting from that. Alternatively, it would place the federal court in the undesirable position of interpreting and applying the state court's decision regarding such matters as the bar date for claims and the accrual date for warranty claims. Abstention avoids all of this and prevents this court from frustrating the state court's ability to establish and enforce a uniform and coherent policy for dealing with NCIC's liquidation. Even assuming the state and federal courts would cooperate to minimize those conflicts, the cost of piecemeal litigation would be great for the parties and the courts.

From what has been presented, the court believes the issues could be of first impression for Kansas and bear upon Kansas' public policy development in insurance liquidation law. For example, the court now believes the plaintiff has shown that his claim regarding what is a recoverable asset of NCIC requires an interpretation of not only Kansas statute but the state court's liquidation order. The court is not persuaded that it can relegate this issue or the others to the category of relatively simple. The court sees the nature and importance of these issues to Kansas public policy as transcending the result in the case at bar. In addition, the extent to which the federal court decides issues related to NCIC's liability to the warranty contract holders, these rulings would impinge on an area that Congress intended by the McCarran–Ferguson Act to be reserved for state regulation. Knowing what issues now must be decided in this case, the court believes federal litigation would be more than an inconvenience to the state court's handling of NCIC's liquidation.

IT IS THEREFORE ORDERED that the plaintiff's motion to reconsider is granted, and the case is remanded to the District Court of Shawnee County, Kansas. The Clerk is directed to mail a certified copy of this order to the Clerk of the Shawnee County District Court.

IT IS FURTHER ORDERED that the plaintiff's request for an award of costs and expenses is denied.