Ron TODD, Commissioner of Insurance, Insurance Department of Kansas, as Liquidator for National Colonial Insurance Co., Plaintiff,

v.

DSN DEALER SERVICE NETWORK, INC.; Gerald Zipper; Barry Gossett; Colonial Charter Holdings, Inc. and Road Services Automobile Club, Inc., Defendants.

No. 94–4068–RDR.

United States District Court, D. Kansas.

Aug. 25, 1994.

Miriam Glueck, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, Frank A. Caro, Jr., Richard H. Ralston, Mary Jo Shaney, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for plaintiff.

Steven R. Fabert, Topeka, KS, for defendants.

### *MEMORANDUM AND ORDER*

ROGERS, District Judge.

This matter is presently before the court upon plaintiff's motion to remand this case to the District Court of Shawnee County, Kansas. The court has heard oral argument on the motion and is. now prepared to rule.[1]

Plaintiff Ron Todd, Insurance Commissioner for the State of Kansas, brought this action in his capacity as statutory liquidator for National Colonial Insurance Company (NCIC) in the District Court of Shawnee County, Kansas. The complaint in this case names five defendants and contains twelve claims. The defendants are Colonial Charter Holdings, Inc. (CCHI), the sole shareholder of NCIC; DSN Dealer Service Network, Inc. (DSN), the parent company of CCHI; Road Services Automobile Club, Inc. (Road Services), the majority shareholder of DSN; Ger-

---

1. At oral argument, counsel for the defendants advised the court that an involuntary bankruptcy petition had recently been filed against one of the defendants. Although neither side has addressed the impact of this occurrence, the court believes that it can proceed to decide the pending motion as it concerns all defendants. *See Baxter Health-Care Corp. v. Hemex Liquidation Trust,* 132 B.R. 863, 867 (N.D.Ill.1991).

ald Zipper, the president and chairman of the board of NCIC, and a director and officer of NCIC, CCHI, DSN and Road Services; and Barry Gossett, a director and officer of NCIC, CCHI, DSN and Road Services, and a minority shareholder of DSN.

The counts of the complaint can be summarized as follows: (1) against DSN for breach of contract, alleging that DSN breached the provisions of two agreements entered into with NCIC by failing to provide the services specified in those agreements; (2) against Zipper and Gossett for breach of fiduciary duty, alleging that they engaged in certain practices that harmed NCIC; (3) against DSN for breach of fiduciary duty, alleging that DSN failed to provide services required by aforementioned agreements and charged NCIC for services which were never performed; (4) against Zipper, Gossett and DSN for negligence, alleging that these defendants owed duties to NCIC which they failed to perform with ordinary care; (5) against Zipper, Gossett and DSN for fraud, alleging that these defendants defrauded NCIC and its policyholders by engaging in certain activities; (6) against Road Services, DSN, CCHI, Zipper and Gossett for voidable preferences, alleging that these defendants transferred large sums of money from NCIC to DSN when they knew that NCIC was insolvent in violation of K.S.A. 40–3631(k)(1); (7) against Road Services, DSN, CCHI, Zipper and Gossett for return of distributions and other payments, alleging that plaintiff is entitled pursuant to K.S.A. 40–3315 to recover distributions and other payments made by these defendants to DSN (8) against DSN, Zipper and Gossett for conversion and constructive trust, alleging that the transfer of monies by these defendants to DSN constitutes conversion; (9) against DSN for unjust enrichment, alleging that DSN received funds pursuant to the aforementioned agreements unjustly; (10) against DSN for fraudulent transfers, alleging that DSN fraudulently transferred NCIC assets to it within one year prior to the filing of a successful petition for liquidation in violation of K.S.A. 40–3629; (11) against DSN for transfers to delay or defraud creditors, alleging that DSN fraudulently transferred NCIC assets to DSN from 1989 to July 16, 1993 in violation of K.S.A.

33–102; and (12) against Road Services, DSN, CCHI, Zipper and Gossett for an accounting, alleging that plaintiff is entitled to an accounting because defendants are in possession of property that belongs to NCIC. Plaintiff seeks damages for the misconduct alleged in the first eleven counts.

The defendants removed this action pursuant to 28 U.S.C. § 1446. The defendants alleged diversity of citizenship as the basis for federal court jurisdiction. The complaint identifies DSN as a Delaware corporation, CCHI and Road Services as New Jersey corporations, Zipper as a New York resident, and Gossett as a New Jersey resident.

NCIC was formerly known as "The Western Indemnity Insurance Company" (Western). Western was incorporated in Kansas in 1964 as a domestic insurance company. CCHI acquired the stock of Western on December 29, 1988. At the time of the acquisition, NCIC was a shell corporation with approximately $8 million in surplus and no liabilities. NCIC began writing insurance in the fall of 1989. NCIC wrote primarily nonstandard automobile physical damages and liability coverages in California. NCIC also engaged in automobile warranty business. In 1990 and 1991, NCIC's premium volume grew dramatically. In 1992, however, NCIC's premium volume declined. NCIC began experiencing severe losses, particularly on the automobile liability and physical damage business written in 1991 and 1992. On July 12, 1993, NCIC was placed into rehabilitation pursuant to an agreed order of rehabilitation because its capital and surplus fell below the minimum statutory requirements under Kansas law. Four days later, NCIC was put into liquidation in proceedings before the District Court of Shawnee County, Kansas pursuant to an agreed order for liquidation with a finding of insolvency. Plaintiff was appointed as liquidator of NCIC at that time. The order of liquidation provided that plaintiff, as part of his duties, "is vested ... with title to all property, assets, contracts, and rights of action of [NCIC] and is authorized to deal ... with the property, assets, business and affairs of [NCIC] and to sue and defend for [NCIC], or for the benefit of its policyholders, stockholders and creditors,

in the courts and tribunals, agencies or arbitration panels of this state and other states in his name ..., or in the name of [NCIC]." DSN subsequently filed a claim in the liquidation proceeding for $2,371,964.00 for "unpaid commissions or invoices."

The State of Kansas has adopted a comprehensive framework for the liquidation of insolvent insurance companies and the resolution of claims by the liquidator and against the liquidator. *See* Kansas Insurers Supervision, Rehabilitation and Liquidation Act (Kansas Liquidation Act), K.S.A. 40–3605 *et seq.* The provisions of this scheme direct the appointment of the Kansas Insurance Commissioner as liquidator who will "take possession of the assets of the insurer" and "administer such assets under the general supervision of the court." K.S.A. 40–3622. The Insurance Commissioner also has the power to "collect all debts and moneys due and claims belonging to the insurer, wherever located." K.S.A. 40–3625(a)(8). The statutory scheme further specifies that the venue for all delinquency proceedings is the District Court of Shawnee County. K.S.A. 40–3608(e).

Plaintiff contends that the abstention doctrine set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) requires the court to abstain from exercising jurisdiction over this case and to remand this action to state court. Plaintiff argues that federal courts should abstain from cases involving matters relating to the administration of an insolvent insurer's estate in a situation such as this one where a state has created a comprehensive scheme for liquidating insolvent insurance companies. Plaintiff further suggests that this action presents difficult issues of state law concerning the application of the Kansas Liquidation Act which should be decided by the Kansas state courts in order to avoid disruption of the State's strong interest in the consistent administration of its regulatory scheme for the liquidation of insolvent insurance companies. The defendants contend that *Burford* abstention would be inappropriate under the facts and circumstances of this case.

Each side has raised at least one procedural argument concerning the propriety of the removal and the necessity of remand. The facts pertinent to these arguments are as follows. This case was filed in state court on April 4, 1994. The matter was removed by defendants on May 3, 1994. Plaintiff filed his motion to remand on June 3, 1994. Prior to filing the motion to remand, plaintiff sought and obtained the issuance of a federal summons for service of process on defendant Gossett.

Plaintiff contends that the defendants' notice of removal is defective because it fails to unambiguously indicate what defendants joined in the removal notice. Plaintiff points out that the notice of removal fails to list what defendants have joined in the motion and which defendants the attorney that signed the motion represents.

▆▆▆ As a general rule, all defendants who have been served must join in a removal petition in order to effect removal. *Northern Illinois Gas Co. v. Airco Industrial Gases*, 676 F.2d 270, 272 (7th Cir.1982). There must be a timely filed written indication from each served defendant, or from some person purporting to formally act on his/her behalf and with the authority to do so, that he/she has actually consented to removal. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1262 n. 11 (5th Cir.1988).

▆▆▆ The removal notice in this case indicates that "[d]efendants hereby submit notice of removal of this action ..." The notice is signed by Steve Fabert of the law firm of Fisher, Patterson, Sayler & Smith. The notice does not specifically indicate that Mr. Fabert represents all defendants, but one must assume this fact given the nature of the notice. This notice of removal is adequate to demonstrate that all defendants have joined in the removal. An attorney purporting to represent the "defendants" has indicated that each defendant joins in the motion. This case differs from the cases cited by the plaintiff where one defendant was representing that other defendants represented by other counsel joined in the removal. Accordingly, plaintiff's procedural argument in support of remand must be rejected.

The defendants have raised two procedural arguments concerning the plaintiff's motion

to remand. First, defendants contend that it was not timely filed pursuant to 28 U.S.C. § 1447 since it was filed over thirty days following the notice of removal. Second, defendants contend that the plaintiff waived his right to remand by invoking the authority of the court prior to filing the motion by obtaining the issuance of a summons directed to one of the defendants.

■ A motion to remand based upon "any defect in removal procedure" must be made within thirty days after the filing of the notice of removal under 28 U.S.C. § 1446. 28 U.S.C. § 1447(c). Although the issue of whether a remand based upon abstention constitutes a "procedural defect" is not entirely settled, *see, e.g., In re Shell Oil Co.,* 932 F.2d 1518, 1522 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992) (thirty-day limit applies to all motions for remand not based on subject matter jurisdiction), the better reasoned approach suggests that "procedural defect" should be defined narrowly and would not include abstention. *See Melahn v. Pennock Insurance, Inc.,* 965 F.2d 1497, 1502–03 (8th Cir.1992) (thirty-day limit not applicable to motion for remand based upon abstention); *Rodrigues v. County of Hawaii,* 823 F.Supp. 798, 802–03 (D.Hawaii 1993) (same). In accordance with *Melahn, Burford* abstention-based remand is not subject to the thirty-day limitation imposed by § 1447(c). Accordingly, the plaintiff's motion to remand was not untimely.

■ Defendants next argue that the plaintiff waived his right to remand when he obtained the issuance of a federal summons for service of process upon one of the defendants. Plaintiff asserts that its request for issuance of a federal summons was made only after defendants' assertion that some of the defendants had not been properly served. Plaintiff argues that his action in seeking the issuance of a federal summons does not rise to a waiver of his right to request remand of this case to state court.

■ Waiver of the right to remand may be found where a party has undertaken affirmative action in federal court. *Lanier v. American Board of Endodontics,* 843 F.2d 901, 904 (6th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). The dispositive issue is not whether plaintiff has filed any document at all in federal court, but instead, it is "the extent of a plaintiff's conduct in the federal proceedings" that is determinative. *Johnson v. Odeco Oil and Gas Co.,* 864 F.2d 40, 42 (5th Cir.1989). The rather insignificant action taken by the plaintiff here does not constitute waiver of his right to remand. *See Mayers v. Connell,* 651 F.Supp. 273, 275 (M.D.La.1986) (plaintiff who caused federal summons to issue after removal of case did not waive right to remand because action of plaintiff was not affirmative act seeking intervention of federal court). The cases relied upon by defendants for support of this argument involve situations where plaintiffs participated extensively in the federal proceeding, usually by engaging in discovery. *See, e.g., Harris v. Edward Hyman Co.,* 664 F.2d 943 (5th Cir.1981) (plaintiff's participation in extensive discovery, both by initiating discovery and responding to discovery requests, constitutes waiver of right to remand); *Wade v. Fireman's Fund Insurance Co.,* 716 F.Supp. 226 (D.La. 1989) (waiver found when plaintiff waited six months before filing motion to remand and during that period attended two status conferences and participated in discovery).

■ Finally, the court turns to the arguments concerning the propriety of *Burford* abstention. Before addressing the concept of *Burford* abstention, the court notes that federal courts have a "virtually unflagging obligation" to exercise jurisdiction given them. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Abstention from the exercise of jurisdiction is the exception, not the rule. *Id.* at 813, 96 S.Ct. at 1244.

The court enters any discussion of *Burford* abstention with some trepidation because the scope of the doctrine has remained elusive over the years due to varying results and abstract verbal formulations found in cases addressing the meaning of the doctrine. In addressing the arguments of the parties, the court has benefitted greatly from the recent opinions of Judge Crow on *Burford* absten-

tion. In *Todd v. Richmond,* 844 F.Supp. 1422, *vacated,* 853 F.Supp. 1309 (D.Kan. 1994), Judge Crow considered the application of *Burford* abstention in a case involving circumstances similar to this case. *Richmond* also had its genesis in the liquidation of NCIC. Todd, acting as the liquidator of NCIC, brought an action in state court against Richmond, the trustee of certain trusts existing under an extended service warranty program sold and administered by DSN Dealer Service Network, Inc., seeking access to information, an accounting and damages. The action was removed to federal court by the defendant. Plaintiff sought remand based upon *Burford* abstention. Initially, Judge Crow denied the plaintiff's motion to remand. In reaching that conclusion, he carefully analyzed the Supreme Court's most recent opinion on *Burford* abstention, *New Orleans Public Service, Inc. (NOPSI) v. Council of City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), and the Tenth Circuit's latest opinion on *Burford* abstention in the context of actions brought by liquidators of insolvent insurance companies, *Grimes v. Crown Life Insurance Co.,* 857 F.2d 699 (10th Cir.1988), *cert. denied,* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989). After identifying several important factors from those cases and noting that abstention is foremost a factual inquiry, Judge Crow analyzed the issues as follows:

> The factors favoring abstention here are without the weight and number to defeat the strong preference in favor of exercising federal court jurisdiction.... The central substantive issues do not implicate important public policy problems for Kansas, do not present complex questions or interpretation disputes of Kansas insurance law, do not require significant familiarity with local regulatory facts and policies, do not require the court to review the decisions of the liquidator or the liquidation court, and do not appear to even be governed by Kansas law. The case can be decided without undermining the liquidator's control of NCIC and the liquidator's equitable distribution powers over the estate, without subjecting the liquidator to expensive, time-consuming and expansive litigation in multiple forums outside of the liquidation proceeding, and without disrupting the state's establishment of a coherent policy for liquidation proceedings.

844 F.Supp. at 1431 (citation omitted).

On reconsideration, Judge Crow determined that he had "misapprehended the factual and legal basis of the plaintiff's intended case." 853 F.Supp. at 1314 (footnote omitted). He concluded that remand based on *Burford* abstention was appropriate. His analysis was as follows:

> [T]he plaintiff's suit is primarily concerned with challenging the propriety of the trustee's actions. Still, the plaintiff's claimed interest in the trust funds and right to any relief will depend upon the plaintiff showing a real likelihood of liability exposure to warranty contract holders. Liability exposure cannot be determined without knowing the actual and projected amount of valid claims made by warranty contract holders during the liquidation proceeding and later. The determination of which claims are valid is when many of the above issues will be addressed. The defendant does not seriously dispute that these issues may need to be decided during this litigation.
>
> In all likelihood, the state court will decide the same issues during the liquidation process, thus creating the possibility for different rulings and the injustice resulting from that. Alternatively, it would place the federal court in the undesirable position of interpreting and applying the state court's decision regarding such matters as the bar date for claims and the accrual date for warranty claims. Abstention avoids all of this and prevents this court from frustrating the state court's ability to establish and enforce a uniform and coherent policy for dealing with NCIC's liquidation. Even assuming the state and federal courts would cooperate to minimize those conflicts, the cost of piecemeal litigation would be great for the parties and the courts.
>
> From what has been presented, the court believes the issues could be of first impression for Kansas and bear upon Kansas' public policy development in insurance

liquidation law. For example, the court now believes the plaintiff has shown that his claim regarding what is a recoverable asset of NCIC requires an interpretation of not only Kansas statute but the state court's liquidation order. The court is not persuaded that it can relegate this issue or the others to the category of relatively simple. The court sees the nature and importance of these issues to Kansas public policy as transcending the result in the case at bar. In addition, the extent to which the federal court decides issues related to NCIC's liability to the warranty contract holders, these rulings would impinge on an area that Congress intended by the McCarran–Ferguson Act to be reserved for state regulation. Knowing what issues now must be decided in this case, the court believes federal litigation would be more than an inconvenience to the state court's handling of NCIC's liquidation.

*Id.* at 1314–15.

Although Judge Crow reversed his earlier ruling on reconsideration, his prior discussion of *Burford* abstention is enlightening and helpful. In the order on reconsideration, Judge Crow found no error in his prior discussion of the relevant law.

Any discussion of *Burford* abstention today must begin with *NOPSI*. In *NOPSI*, a case where a local utility filed cases in both state and federal court seeking review as well as injunctive and declaratory relief of the city council's order partially denying the utility's requested rate increase, the Supreme Court described the *Burford* abstention doctrine as follows:

Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

491 U.S. at 361, 109 S.Ct. at 2514 (quoting *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1245).

This "distillation" of *Burford* abstention provides some assistance for its application but also raises some new questions and new issues. In *Richmond*, Judge Crow found that *NOPSI* revealed the following:

Several propositions emerge from *NOPSI* which rein in *Burford* abstention and call into question the broader applications of this doctrine in prior case law. *Burford* abstention is not required just because complex state administrative processes exist. *NOPSI*, 491 U.S. at 362, 109 S.Ct. at 2515. While it rests on the concern that federal courts not unduly intrude into state governmental processes, *Burford* abstention is not required in all cases having the " 'potential for conflict' with state regulatory law or policy." *NOPSI*, 491 U.S. at 362, 109 S.Ct. at 2515 (quoting *Colorado River*, 424 U.S. at 816, 96 S.Ct. at 1245). In other words, the doctrine "requires more than a desire to avoid every inconvenience to or disruption of a state's regulatory systems." *Fragoso* [*v. Lopez* ], 991 F.2d [878] at 885 [ (1st Cir. 1993) ]; *see University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d [265] at 272 [ (3d Cir.1991) ] (citing Erwin Chemerinsky, *Federal Jurisdiction 111–12* (Supp.1990)). Finally, careful attention is given to whether the exercise of federal jurisdiction would frustrate the state's regulatory efforts to maintain the desired uniform treatment of matters distinctively local in nature. *NOPSI*, 491 U.S. at 362–64, 109 S.Ct. at 2515–16. In short, *NOPSI* is the shot across the bow warning courts against extending *Burford* and causing courts to question the directions offered by pre-*NOPSI* precedent. *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d at 273; *see Fragoso v. Lopez*, 991 F.2d at 884 n. 9.

The abstention doctrine stated in *NOPSI* breaks down into these basic elements: (1) the federal court is "sitting in equity"; (2) "timely and adequate state-court review is available"; (3) there is the potential for interference "with proceed-

ings or orders of state administrative agencies"; and (4) there are involved either: (a) "difficult questions of state law bearing on policy public problems of substantial public import whose importance transcends the result in the case at bar," or (b) federal court disruption "of state efforts to establish a coherent policy with respect to a matter of substantial public concern." 844 F.Supp. at 1427.

The other case which requires some consideration and analysis, as recognized by both sides, is *Grimes.* The vitality of *Grimes* in light of *NOPSI* is questionable, but it remains the Tenth Circuit's latest pronouncement on the applicability of the *Burford* abstention doctrine to a case arising from the liquidation of an insolvent insurance company. In *Grimes,* the Oklahoma Insurance Commissioner, as liquidator of an insolvent insurance company, brought a declaratory judgment action against another insurance company regarding the terms of a reinsurance agreement between the insolvent insurer and the reinsurer. The Tenth Circuit held that the district court erred in not abstaining under *Burford.* Citing a long line of judicial authority, the Court recognized that "most federal courts have declined to exercise jurisdiction in disputes like this one which present themselves in the larger context of state liquidation proceedings." 857 F.2d at 704. The Tenth Circuit suggested that the following factors should be considered in applying *Burford* abstention in cases involving insolvent insurance companies:

> (1) whether the suit is based on a cause of action which is exclusively federal ...; (2) whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry ...; (3) whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues ...; and (4) whether difficult or unusual state laws are at issue.

*Id.* at 704–05 (citations omitted). In applying these factors, the Tenth Circuit focused on the fact that (1) Oklahoma had adopted a complex and comprehensive scheme of insurance regulation which provided for the liqui-

dation of insolvent insurers and established a special forum to handle the liquidation proceedings; and (2) plaintiff's claims raised only state law issues which were important matters relevant to the liquidation of insolvent insurers. *Id.* at 705–06. The court concluded that the exercise of federal jurisdiction in the case "would disrupt the ability of the state officers of Oklahoma in conjunction with the Oklahoma County District Court to devise and efficiently operate a complex system of administrative and judicial interrelationships which make up the statutory scheme for liquidating insolvent insurers in Oklahoma." *Id.* at 706.

The court shall now turn to the specific arguments of the parties concerning the application of *NOPSI* and *Grimes* to this case. Plaintiff questions whether *NOPSI* must be applied here. Plaintiff suggests that *Grimes* applies specifically to *Burford* abstention in the context of claims arising from the liquidation of insolvent insurers and requires that the court abstain in this case. Plaintiff nevertheless contends that *Burford* abstention is appropriate even under *NOPSI.* The defendants contend that abstention is not required under either *NOPSI* or *Grimes.* The defendants argue that almost every requirement mandated by the courts in those cases is absent here. For example, the defendants contend, under the *NOPSI* formulation, that (1) timely and adequate state court review is not available; (2) this court is not sitting in equity; (3) there are no difficult questions of state law bearing on policy problems of substantial import; and (4) the exercise of jurisdiction by this court would not disrupt the liquidation proceedings in state court. With the *Grimes* analysis in mind, defendants contend that (1) the overriding issues in this case, the existence of personal jurisdiction over the defendants and the extraterritorial reach of the Kansas insolvency statutes, are primarily federal issues; (2) this action does not require the court to address issues which are relevant to the liquidation proceeding or to state policy on the regulation of the insurance industry; (3) the state has not indicated a desire to see the issues present in this case in a special state forum; and, once again, (4) there are no difficult or unusual state laws at issue in this case.

The court does not find it necessary to determine whether *Grimes* is alive and well after *NOPSI*. Our analysis shall consider the elements set forth in both cases.

In *NOPSI*, the Supreme Court appeared to limit *Burford* abstention to suits seeking equitable relief. This particular limitation is of some importance here because defendants have argued that *Burford* abstention is not appropriate because this is not an action in equity. Although acknowledging that one of the counts of plaintiff's complaint does seek an accounting, defendant notes that the action must be considered as one at law because the remainder of the counts seek damages. Plaintiff has responded with a two-pronged attack. First, plaintiff argues that *Burford* abstention can be utilized even if the court is not sitting in equity. Plaintiff points to several pre-*NOPSI* circuit court cases for support of this proposition. Second, plaintiff asserts that the court is sitting in equity here, pointing to the claim seeking an accounting as well as to the claims alleging breach of fiduciary duty, voidable preference, constructive trust and unjust enrichment.

The meaning of the Supreme Court's language that the court must be sitting in equity is not entirely clear. Several courts have construed this language to mean that *Burford* abstention is inapplicable to cases where the claims are for money damages. *See, e.g., Fragoso v. Lopez,* 991 F.2d 878, 882 (1st Cir.1993); *University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 271–72 (3d Cir.1991); *Costle v. Fremont Indemnity Co.,* 839 F.Supp. 265, 270 (D.Vt.1993). The Third Circuit reached this conclusion in *Peat Marwick* after noting that the language in *NOPSI* was dicta. 923 F.2d at 271. In a subsequent case, the Third Circuit noted its uncertainty on this aspect of *Burford* abstention. *See General Glass Industries Corp. v. Monsour Medical Foundation,* 973 F.2d 197, 202 (3d Cir.1992) ("Decisional authority remains inconclusive as to whether *Burford* abstention may be ordered *only* in cases of an equitable nature, or whether ..., the distinction between legal and equitable relief is not dispositive in abstention cases."). Such a requirement might have some basis since suits in equity were the original prov-ince of all varieties of abstention, including the *Burford* variety. Young, Federal Court Abstention and State Administrative Law from Burford to Ankenbradt: Fifty Years of Judicial Federalism under Burford v. Sun Oil Co. and Kindred Doctrines, 42 DePaul L.Rev. 859, 910 (1993). "Restoring the original equitable relief limitation provides a rationale (equitable discretion) for harmonizing abstention with the arguably mandatory nature of the statutory grants of jurisdiction to the federal courts." *Id.*

On the other hand, to limit the applicability of *Burford* abstention to federal courts sitting in equity makes little sense given the recognized basis for abstention. As stated in 17A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4241 (1988):

> Considerations of federalism are at the heart of abstention. These considerations are too important to be made dependent on ancient distinctions about the powers of the several courts at Westminster Hall, and the ability of a federal court to defer to a state in a proper case ought not to depend on whether the case is thought of as "legal" or "equitable."

Moreover, *NOPSI* may not even mandate such a requirement. *See Peat Marwick,* 923 F.2d at 278 (Mansmann, J., concurring) ("While some of the Supreme Court's language may suggest that Burford abstention is available where federal courts exercise discretionary equitable jurisdiction, ... the Court was not called upon to address the application of abstention to legal actions in NOPSI."). If *NOPSI* is construed to mandate such a requirement, it would appear to be out of step with past Supreme Court cases where the Court had moved away from the distinction between legal and equitable relief in abstention cases. *See, e.g., Fornaris v. Ridge Tool Co.,* 400 U.S. 41, 43–44, 91 S.Ct. 156, 157–58, 27 L.Ed.2d 174 (1970) (abstention to avoid adjudication of constitutional question appropriate in a case involving request for money damages); *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28, 79 S.Ct. 1070, 1072–73, 3 L.Ed.2d 1058 (1959) (abstention appropriate in eminent domain case). In addition, a Supreme Court

case decided after *NOPSI* suggests that reading *NOPSI* too broadly on this requirement might be ill-advised. In *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990), the Supreme Court, although concerned with the issue of whether state courts have concurrent jurisdiction over civil RICO claims, affirmed a Fourth Circuit decision in which the court upheld *Burford* abstention in a case involving RICO claims for money damages.

 The court is forced to the conclusion, in light of the language contained in *NOPSI*, that some form of equitable relief must be sought in order to apply *Burford* abstention, although a reconciliation of *NOPSI* with prior and subsequent Supreme Court cases is difficult at best. The court believes that the relief sought by the plaintiff here is sufficient to support a finding that the court is sitting in equity, at least in part. Contrary to the argument made by the defendant, there is no requirement that the majority of the case seek equitable relief. The only requirement is that the court be "sitting in equity." A request for some equitable relief would require the court to sit in equity, at least for some aspect of the case. Sufficient equitable relief is requested here for the exercise of *Burford* abstention if otherwise appropriate.

 The defendants have also contended that timely and adequate state review is not available. This attack has two bases. First, defendants suggest that state review is not "adequate" because "[i]n the liquidation proceeding the court has appeared to be a mere rubber stamp to the deputy liquidator." Second, the defendants suggest that state review is not "timely" because in the liquidation proceeding the liquidator has opposed appellate review of *ex parte* orders prior to the termination of the liquidation proceeding.

The meaning of "timely and adequate state court review" is another of the vague requirements of *Burford* abstention. Although the court fails to find much guidance on this issue, we are certain that the matters raised by the defendants are insufficient to demonstrate that timely and adequate state court review is not available. The defendants have failed to provide any evidence or even any

example in support of their contention that the state court judge in the liquidation proceeding has acted as a "mere rubber stamp" for the liquidator. As to the second basis for the defendants' argument, the court fails to find any support for their belief that a position taken by the liquidator in the liquidation proceeding on the propriety of an interlocutory appeal somehow impinges upon the defendants' right of appellate review. Moreover, as pointed out by plaintiff, if the defendants are correct on their right to interlocutory appeal in the liquidation proceeding, then that review will be available regardless of the position taken by the liquidator. In sum, the defendants' contention that this requirement is not met in this case is wholly without merit.

Although not addressed by the parties, the limitation imposed in *NOPSI* that *Burford* abstention is proper only to avoid "interfer[ence] with the proceedings or orders of states administrative agencies" requires some mention. In *Richmond*, Judge Crow noted that the defendant there had raised the issue, but he was not sufficiently persuaded to base his ruling on the issue. He summarized the arguments of the defendant as follows:

> The defendant first argues that element three is not met because the Insurance Commissioner as receiver or liquidator is an agent of the court and the Kansas insurance law scheme for liquidation creates something resembling a judicial structure more than an administrative agency. *See Fragoso v. Lopez*, 991 F.2d 878, 883 (1st Cir.1993). The defendant also maintains that no administrative agency order is before the court for review in this case. *See Bradford v. Moench*, 809 F.Supp. 1473, 1478 (D.Utah 1992). Both arguments have merit, but not enough for the court to rest its ruling on.

844 F.Supp. at 1427 n. 7.

In *Fragoso*, a case involving a medical malpractice action against a physician and her insurer who had become insolvent during the pendency of the appeal, the First Circuit found that the absence of administrative ac-

tion made the relevancy of *Burford* abstention questionable:

> *NOPSI* characterizes *Burford* abstention as a doctrine shielding "state administrative agencies" from federal court interference. *Id.* While Puerto Rico's tailored revision of the Rehabilitation and Liquidation Model Act, *see* P.R.Laws Ann. tit. 26, §§ 4001–4054, sets in place a "comprehensive framework for the liquidation of insolvent insurance companies and the resolution of claims against them," *Gonzalez v. Media Elements, Inc.*, 946 F.2d 157, 157 (1st Cir.1991) (per curiam), we question whether the scheme creates a state administrative agency, as opposed to a judicial structure, to which deference under *Burford* may be paid. While the Insurance Code *regulates* insolvent insurers doing business in Puerto Rico, it is not at all clear that it sets up the functional equivalent of an administrative agency.

991 F.2d at 883.

▉ This limitation, however, is somewhat puzzling in light of Supreme Court cases issued prior to *NOPSI* and after *NOPSI*. In *NOPSI*, the Supreme Court cited *Colorado River Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976) as support for its distillation of the law on *Burford* abstention, but *Colorado River* did not mention the presence of administrative agencies as necessary for *Burford* abstention. The words used by the Supreme Court in *NOPSI* to define one category of *Burford* abstention—where there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"—appear in the *Colorado River* opinion, where they are exemplified by citation to a case involving no administrative agency at all. *See Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244–45 (citing *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959)). *Thibodaux* was a state eminent domain proceeding which would have proceeded entirely in the state courts, not in state administrative bodies. Moreover, recently in *Ankenbrandt v. Richards*, — U.S. ——, ——, 112 S.Ct. 2206,

2216, 119 L.Ed.2d 468 (1992), the Supreme Court stated in dictum that it was "not inconceivable" that *Burford* abstention would be applicable in certain cases involving state domestic relations law. Such proceedings typically occur in state courts and not administrative agencies. The upshot of the present situation is that *Burford* abstention may or may not be limited to only cases involving administrative agencies. The court is not forced to reach this issue since neither party has taken a position on it in this case.

Finally, we turn to the other requirements and factors noted in *NOPSI* and *Grimes*. There is some overlap, so we need not distinguish between the two cases in considering the arguments of the parties. Plaintiff has asserted that difficult questions of state law exist which transcend the results of this case. Specifically, plaintiff points to the claims brought under the Kansas Liquidation Act. Plaintiff notes that three of the counts of the complaint raise claims under this Act. Plaintiff argues that the state courts have not addressed the issue of preferential transfers under K.S.A. 40–3631, fraudulent transfers under K.S.A. 40–3629 or the recovery of distributions and other payments under K.S.A. 40–3315. The defendants have countered that there are no difficult questions of public policy in this case. They argue that the applicable law is well established in numerous judicial decisions or is supplied by unambiguous statutes.

▉ The key aspect of this particular category is that the importance of the issue in the case to a state must exceed a party's and the federal government's interests in the availability of a federal forum. The determination of what issues are worthy of such importance is difficult to discern. Insurance regulation, however, has generally been one of the state interests that has been deemed important enough by the circuit courts to justify the application of *Burford* abstention. *See, e.g., Barnhardt Marine Insurance, Inc. v. New England International Surety of America, Inc.*, 961 F.2d 529, 531 (5th Cir. 1992); *Peat Marwick*, 923 F.2d at 271; *Martin Insurance Agency v. Prudential Reinsurance Co.*, 910 F.2d 249, 254–55 (5th Cir. 1990); *Grimes*, 857 F.2d at 703–04; *Lac*

*D'Amiante du Quebec, Ltee. v. American Home Assurance Co.*, 864 F.2d 1033 (3d Cir. 1988); *Corcoran v. Ardra Insurance Co.*, 842 F.2d 31, 36 (2d Cir.1988). Nevertheless, most courts have refused to adopt a per se rule in cases involving claims arising from the liquidation of an insolvent insurance company. *See, e.g., Grode v. Mutual Fire, Marine and Inland Insurance Co.*, 8 F.3d 953, 959 (3d Cir.1993); *Grimes*, 857 F.2d at 704; *Motor Club of America v. Weatherford*, 841 F.Supp. 610, 625 (D.N.J.1994).

■ After a careful review of the contentions of the parties, the court is persuaded by the arguments of the plaintiff on this issue. The court recognizes that many of the claims asserted by the plaintiff are rather standard contract and tort claims. However, the claims asserted by plaintiff under the Kansas Liquidation Act raise difficult issues which have not been addressed by the Kansas courts. These issues will have a significant impact on the development of Kansas public policy in insurance liquidation law. The nature and importance of these issues will transcend the result of this action. The presence of these claims under the Kansas Liquidation Act distinguishes this case from those relied upon by the defendants where ordinary contract and tort claims were all that were asserted. *See Grode*, 8 F.3d at 959 (contract action for unpaid debt brought by liquidator); *Costle*, 839 F.Supp. at 267 (collection action for proceeds due under several reinsurance contracts brought by liquidator). The defendant implicitly recognizes that the claims under the Kansas Liquidation Act have not been addressed by the Kansas courts, but asserts that these claims can be easily decided because they are based upon "unambiguous" statutes. The court is not convinced that the issues arising under this Act are as easily resolved as defendants would suggest. The statutes are subject to varying interpretations with no assistance from Kansas court decisions. The nature of these issues is complex, and the Kansas courts should have the opportunity to shape this law since it involves an area that Congress intended by the McCarran–Furguson Act to be reserved to state regulation.

The court is also concerned that any efforts by the court in this case may disrupt the liquidation proceedings. Defendant DSN has filed a claim for over two million dollars in the liquidation proceeding. The court is convinced that any decision here will impact the determination of issues that will be raised and decided in the liquidation proceeding. The pendency of DSN's claim in the liquidation proceeding distinguishes this case from one of the cases in which courts have found *Burford* abstention inappropriate in actions involving insolvent insurance companies. *See Melahn v. Pennock Insurance, Inc.*, 965 F.2d 1497 (8th Cir.1992). *Melahn* involved an action by the Missouri receiver of an insolvent insurance company against an agent to recover unearned commissions and unearned premiums. In holding that *Burford* abstention was inappropriate under the particular circumstances of that case, the Eighth Circuit specifically noted that the defendant had not initiated a claim in the state insolvency proceedings. *Id.* at 1506. The presence of the claim means that the issues asserted here will be considered in the liquidation proceeding since plaintiff will undoubtedly raise these same issues in defense of the liquidation claim. This situation would create risk of duplication, inconsistent results, and unnecessary federal court interference with and disruption of the Kansas statutory framework for the liquidation of insolvent insurers.

■ The consideration of the other factors noted in *Grimes* also suggests that abstention is appropriate here. The relevant issues in this case are solely issues of state law. The defendants' efforts to suggest that federal issues predominate in this case are meritless. The basis of defendants' contention that federal issues overshadow state law issues concerns their arguments on personal jurisdiction and the "extraterritorial reach" of the Kansas insurance statutes. The defendants also suggest New Jersey law must be applied here, not Kansas law, since the agreement which forms the basis of Count 1 provides that any disputes arising from that agreement be brought in New Jersey. The court is not persuaded by either of these arguments. Neither of these arguments create a "cause of action which is exclusively

**1544**

federal." The fact that the state court may have to deal with issues which may call for some interpretation of federal law or the United States Constitution does not convert the plaintiff's claims to federal ones. The issues in the case are directly relevant to the comprehensive scheme established by the State of Kansas to govern the actions of insolvent insurers.

The defendants have also suggested that the Kansas Liquidation Act does not create a special state forum to regulate and adjudicate these issues. The defendants argue that the statutes under the Act allow the liquidator to file suit in a variety of courts, including federal district courts. *See, e.g.,* K.S.A. 40–3649(e); K.S.A. 40–3608(d); K.S.A. 40–3609(b). The court believes that the defendants have misinterpreted the substance of the Kansas Liquidation Act. Although the Act does allow the liquidator in special circumstances to proceed in other venues, the Act contemplates that claims such as those asserted in this case will be brought in the District Court of Shawnee County, Kansas. *See* K.S.A. 40–3608(b) and (d). As stated previously, the Kansas statutory scheme creates a special state forum to adjudicate and regulate the issues "preliminary to, incidental to or relating to" the liquidation proceedings of insolvent insurance companies.

In sum, we find that both the Supreme Court's articulation in *NOPSI* of the rationale behind *Burford* and the Tenth Circuit's four-factor test in *Grimes* point to abstention in the present case. We reach this conclusion based on a variety of factors, including the following: (1) the strong state interest in regulating insolvent insurers; (2) the state's promulgation of a comprehensive scheme for regulating insolvent insurance companies; (3) the dominance of state law issues in this case; (4) the likely disruptive nature of federal review; and (5) the presence of difficult state law issues, particularly those arising under the Kansas Liquidation Act, whose importance transcends the result in the instant case. The exercise of jurisdiction in this case would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. Accordingly, the court shall remand this action to the District Court of Shawnee County, Kansas for all further proceedings.

**IT IS THEREFORE ORDERED** that plaintiff's motion to remand be hereby granted. This action is hereby remanded to the District Court of Shawnee County, Kansas for all further proceedings.

**IT IS SO ORDERED.**