Mary HARTUNG, as successor to James M. Alcorn, Director of the Idaho Department of Insurance in his statutory capacity as Rehabilitator of The Universe Life Insurance Company, and Special Deputy Rehabilitator John Reuter, Plaintiffs,

v.

Kathleen SEBELIUS, as Commissioner of the Kansas Department of Insurance in her statutory capacity as Liquidator of The Centennial Life Insurance Company, and Special Deputy Liquidator Dan Watkins, Defendants.

No. 98–4053–RDR.

United States District Court,
D. Kansas.

Feb. 9, 1999.

Richard D. Rhyne, Kenton E. Snow, John C Craft, Richard A Riley, (See above), for John Reuter, Special Deputy Rehabilitator of The Universe Life Insurance Company, plaintiff.

Terrance M. Summers, Douglas J. Schmidt, Blackwell Sanders Peper Martin LLP, Kansas City, MO, for defendants.

Terrance M. Summers, Douglas J. Schmidt, (See above), for Dan Watkins, Special Deputy Rehabilitator of The Centennial Life Insurance Company, defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is presently before the court upon defendants' motion to enforce stay or to abstain. Having carefully reviewed the materials submitted by the parties, the court is now prepared to rule.

Mary Hartung and John Reuter, bring this declaratory judgment action in their capacities as rehabilitator and deputy rehabilitator, respectively, for The Universe Life Insurance Company (Universe). Plaintiffs seek an order of the court declaring that a certain Idaho court judgment is entitled to full faith and credit in all actions between the plaintiffs and the defendants. The defendants are Kathleen Sebelius, Commissioner of the Kansas Department of Insurance and rehabilitator of The Centennial Life Insurance Company (Centennial), and Dan Watkins, special deputy rehabilitator of Centennial.

### I.

The facts concerning the issues at hand can be summarized as follows. Universe is an Idaho insurance company. Centennial is a Kansas insurance company. In April 1994, the Idaho Department of Insurance placed Universe into voluntary supervision. In response to concerns over Universe's inadequate capital and surplus, certain group health insurance policies known as Group Universal Health policies were transferred from Universe to Centennial in October 1994. Under the transfer agreement, Universe agreed to deliver assets to Centennial in an amount sufficient to equal the reserves statutorily required for the transferred liabilities. In March 1996, Universe was placed in rehabilitation proceedings in Idaho. James M. Alcorn was originally the rehabilitator but has since been replaced by plaintiff Hartung. In the rehabilitation proceedings, Universe proposed a plan which provided, in part, for the rescission of the transfer agreements between Universe and Centennial. Universe and Centennial thereafter stipulated to the entry of a rescission order by the Idaho rehabilitation court. Pursuant to the stipulation, Universe reassumed all liabilities on the group policies and Centennial was required to deposit $14,500,000 in a trust account. The stipulated rescission order also allowed the parties to continue to litigate how much Centennial would be required to pay Universe in addition to the $14,500,000 deposit. Litigation on this issue proceeded in state court in Idaho.

Centennial was placed under voluntary administrative supervision by the Kansas Commissioner of Insurance on November 6, 1997. On February 4, 1998, Centennial was placed in rehabilitation proceedings in Kansas state court. Defendant Sebelius was appointed as rehabilitator.

On January 21, 1998, the Idaho state court issued a decision after conducting a hearing on a motion for summary judgment filed by the Universe rehabilitator. The court found essentially that Centennial should not be allowed to retain any cash or premiums concerning the group policies. The court also determined that the amount of restitution owed by Centennial to Universe would have to be litigated in the future because genuine issues of material fact remained. Another hearing was held and the court entered an order on February 19, 1998 essentially granting the relief requested by the Universe rehabilitator. The court determined that Universe was entitled to restitution from Centennial for monies received by Centennial, consisting of assets transferred to Centennial and net premiums received by Cen-

tennial, in the aggregate amount of $19,-273,516 plus interest, less the $13,500,000 in funds already transferred from Centennial to Universe. The Idaho court entered final judgment on its order determining that there was no just reason for delay of the entry of final judgment. On March 19, 1998, plaintiffs filed this action. On March 23, 1998, the Centennial rehabilitator filed a motion seeking relief from the Idaho judgment. On April 1, 1998, the Centennial rehabilitator filed a notice of appeal. The Centennial rehabilitator, however, did not file a motion to stay the judgment or post a supersedeas bond.

On May 4, 1998, plaintiffs' filed a motion for temporary restraining order, preliminary injunction and permanent injunction pursuant to Fed.R.Civ.P. 65. This motion was ultimately resolved when the parties agreed to a preliminary injunction order. As part of that order, the parties agreed to deposit approximately $1,500,000 with the court pending resolution of this case.

On May 27, 1998, Centennial was placed under a liquidation order. The Kansas state court found that Centennial was insolvent as defined by K.S.A. 40–3607(k)(2) and placed Centennial into liquidation pursuant to K.S.A. 40–3620 and 40–3621.

On June 11, 1998, the Centennial rehabilitators filed an action in the District Court of Shawnee County, Kansas to avoid and recover certain preferences. They sought to avoid as preference certain transfers of assets that had occurred in the Idaho court proceedings. This state court action was removed to this court by the Universe rehabilitators on July 8, 1998. The case was designated as Case No. 98–4114–RDR. The Centennial rehabilitators sought remand on August 7, 1998. On February 9, 1998, the court remanded the case to Kansas state court.

## II.

Defendants request a stay of this action pursuant to K.S.A. 40–3627(a) or, in the alternative, abstention pursuant to the abstention doctrine set forth in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In arguing for abstention, defendant contends, relying upon the McCarran Ferguson Act, that federal courts should abstain from cases involving matters relating to the administration of an insolvent insurer's estate in a situation such as this one where a state has created a comprehensive scheme for liquidating insolvent insurance companies.

### A.

■ In general, federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Nevertheless, under certain circumstances, a federal court may decline to hear the merits of a case even though it has jurisdiction over the matter. These circumstances have been recognized in a number of decisions which have established the "abstention" doctrines.

In *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court recognized one type of abstention. In *Burford,* the Supreme Court held that a federal district court should have dismissed a suit attacking the validity of an order of the Texas Railroad Commission granting Burford permission "to drill four wells on a small plot of land in the East Texas oil field." The Court deemed abstention appropriate because it found the proration of gas and oil and the regulation of the gas and oil industry to involve "basic problems of Texas policy," such that "equitable discretion should be exercised to give the Texas courts the first opportunity to consider them." *Burford,* 319 U.S. at 332, 63 S.Ct. 1098. Because it found state procedures "expeditious and adequate," and federal intervention potentially "dangerous" to the success of the state's regulatory scheme, the Court concluded that "a sound respect for the independence of state action requires the federal equity court to stay its hand." *Id.* at 334, 63 S.Ct. 1098.

The Supreme Court reiterated its reluctance to pass upon questions turning on largely local issues in *Alabama Public Service Commission v. Southern Railroad Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), where it abstained from deciding whether the Alabama Public Service Commission violated a railroad's due process rights by requiring continued operation of unprofitable railroad lines. In that case, the Court held that review was inappropriate because the success of the federal constitutional challenge primarily depended upon the "local factor of public need for the service rendered." *Id.* at 347, 71 S.Ct. 762.

Finally, in *New Orleans Public Service, Inc. v. Council of the City of New Orleans* ("NOPSI"), 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Court clarified *Burford* abstention and found it appropriate in two instances:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of a question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*NOPSI*, 491 U.S. at 361, 109 S.Ct. 2506 (quoting *Colorado River*, 424 U.S. at 814, 96 S.Ct. 1236).

■ A strong policy favoring abstention in the context of insurance company insolvencies is found in the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1115. In this Act, Congress consigned the states the primary responsibility for regulating the insurance industry. *See* 15 U.S.C. § 1012(b) ("No act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.").

■ A review of the relevant circumstances and the pertinent cases reveals that the instant action cannot proceed. *See Grimes v. Crown Life Ins. Co.*, 857 F.2d 699 (10th Cir.1988), *cert. denied*, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989); *Todd v. DSN Dealer Service Network, Inc.*, 861 F.Supp. 1531 (D.Kan.1994); *see also Clark v. Fitzgibbons*, 105 F.3d 1049 (5th Cir.1997); *Hartford Casualty Ins. Co. v. Borg–Warner*, 913 F.2d 419 (7th Cir.1990). The court is not persuaded by the plaintiffs' efforts to distinguish these cases. As this court has previously recognized, Kansas has formulated a complex and comprehensive scheme of insurance regulation for the liquidation of an insolvent insurer. *Todd v. DSN*, 861 F.Supp. at 1544. Like most states, Kansas enacted these laws under the protection provided by the McCarran–Ferguson Act. This court is confident that the prosecution of this case here would disrupt the extensive plan established by the State of Kansas for the orderly disposition of claims against insolvent insurance companies like Centennial.

Recently, in *State of Idaho v. Centennial Life Insurance*, No. 98–2146–JWL (D.Kan.1/14/99), Judge Lungstrum rendered a decision in a case involving the same factual background as the instant case with legal issues virtually identical to those raised in this case. There, the Universe rehabilitator initiated a garnishment action to attach certain reinsurance proceeds allegedly owed Centennial by Centennial's reinsurer. Judge Lungstrum applied *Burford* abstention and stayed his case until the conclusion of the Centennial liquidation proceedings in state court. He determined that the exercise of jurisdiction in the garnishment action would be disruptive of state efforts to maintain a coherent policy with respect to the liquidation of insolvent insurance companies.

This court agrees with the analysis used by Judge Lungstrum in his case and be-

lieves that it applies here as well. As explained by Judge Lungstrum and by other judges addressing this issue, the disposition of a claim involving an insolvent insurer in federal court while a state insolvency proceeding is pending would usurp the state's control over the liquidation proceeding by allowing the claimant to preempt others in the distribution of the insurance company's assets. This would not only violate the policy of the McCarran–Ferguson Act, but would also undermine the comity rationale promoted by the *Burford* doctrine. Accordingly, the court finds that *Burford* abstention is appropriate here.

### B.

The only question left concerns whether we should stay this action or dismiss it. In *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), the Supreme Court addressed the application of *Burford* abstention to common law damages claims. In so doing, however, the Court explained that all abstention doctrines are equitable in nature, and the granting of equitable relief lies within the sound discretion of the federal courts. *Id.* at 716–20, 116 S.Ct. 1712. When abstention applies, a federal court, in its discretion, can decline to exercise its equitable powers. *Id.* at 716–18, 116 S.Ct. 1712. Conversely, an action for damages does not lie within a federal court's discretion; thus, damages actions require a federal court to retain its jurisdiction by entering a stay when abstention is appropriate rather than altogether dismissing the case. *Id.* at 716–22, 116 S.Ct. 1712.

The nature of the relief sought by the plaintiffs allows the court discretion to either stay or dismiss this action. *See Quackenbush*, 517 U.S. at 718–19, 116 S.Ct. 1712. After a careful review of the circumstances surrounding this case, the court believes that dismissal is appropriate. The issues involved in this case will be adequately litigated in state court in the remand proceedings of Case No. 98–4114. Plaintiffs have failed to demonstrate why this action needs to continue. Accordingly, the court shall dismiss this case. The court directs that the stipulated preliminary injunction be hereby dissolved. The court further directs the parties to inform the court what should be done with the funds that are presently being held in the court's registry.

**IT IS THEREFORE ORDERED** that the defendants' motion to enforce stay or, in the alternative, to abstain from exercising jurisdiction (Doc. # 21) be hereby granted in part. The court shall abstain from jurisdiction and dismiss this case.

**IT IS FURTHER ORDERED** that the stipulated preliminary injunction be hereby dissolved.

**IT IS FURTHER ORDERED** that the parties inform the court within ten days what should be done with the funds that are presently held in the court's registry.

**IT IS SO ORDERED.**